STATE *v.* JOHN LANSING.

January Term, 1936.

Present: SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ., and BUTTLES, Supr. J.

Opinion filed May 5, 1936.

■

*Lindley S. Squires* for the respondent.

*Asa S. Bloomer*, State's attorney, for the State.

THOMPSON, J. This is a prosecution by an information containing two counts for the violation of a provision of the motor vehicle law. There was a trial by jury in the Rutland municipal court that resulted in a verdict of "not guilty" on the first count and a verdict of "guilty" on the second count. Judgment was rendered on the verdict of "guilty," and sentence was imposed. The respondent excepted. The information, as originally drawn, contained one count in which it was charged that the respondent at Clarendon in the county of Rutland, on the 17th day of August, 1935, did then and there operate on the public highway a certain Dodge automobile when the same had not been legally registered by the commissioner of motor vehicles for the State of Vermont, contrary to the form of the statute, etc.

After a jury had been drawn to try the case, but before the trial began, the court permitted the State to amend the information by adding a second count which, in substance, is

the same as the first count, except that it is alleged therein that the offense was committed on the 7th day of August, 1935.

The respondent objected to the filing of the second count, and objected to being tried thereon, on the grounds that the jury had been drawn and summoned to try him on the first count, and that the second count charged him with a separate and distinct offense from that on which he had been arraigned, pleaded to, and for which a jury had been drawn. The court allowed the second count to be filed, and allowed the respondent · an exception. The court then called upon the respondent to plead to the second count. The respondent stood mute, and the count then entered a plea of "not guilty" thereto, and directed the trial to proceed on both counts against the objection of the respondent, and the respondent was allowed an exception.

■ When the respondent stood mute on being called to plead to the second count, the court followed the proper procedure by entering a plea of "not guilty" for him, and proceeding with the trial. P. L. 2373; *State* v. *Drown,* 85 Vt. 233, 238, 81 Atl. 641.

■ ■ If the respondent was not prepared to go on trial on the second count when that count was filed, he should have moved the court for a continuance so that he might have time to prepare his defense. He did not move for a continuance. If he had a reasonable ground of objection to being tried on the second count by the jury that had been drawn, he should have moved the court to discharge that jury and drawn a new jury. This he did not do. We assume, nothing appearing to the contrary, that the respondent did not have a reasonable ground of objection to being tried on the second count by the jury that had been drawn, and that he was content to be tried by that jury. No error was committed when the court directed the trial to proceed on both counts.

■ ■ The court did not commit error when it permitted the State to amend the information by adding the second count, "for, at common law, informations were amendable in substance, even to the striking out or the addition of new counts." *State* v. *White,* 64 Vt. 372, 24 Atl. 250; *State* v. *Hubbard,* 71 Vt. 405, 45 Atl. 751.

At the close of all the evidence, the respondent moved for a directed verdict of "not guilty" on the second count on the

grounds that the undisputed facts are that on August 7, 1935, the respondent pushed the automobile in question into the highway, that it moved a short distance by reason of its being pushed and the force of gravity, and from that point on to the barway of the respondent's home, it was towed; that those facts do not constitute the operation of a motor vehicle on a highway without registration within the meaning of the law which prohibits the operation of an unregistered motor vehicle on any highway in this State. The motion was denied, and respondent was allowed an exception.

The facts stated in the defendant's motion for a verdict are not disputed, but there are other material facts which are undisputed, which the respondent has failed to state. The following undisputed facts appear from the testimony of the respondent: The respondent lives in Chippenhook in the town of Clarendon with Harold Green and his wife on a farm the Greens had leased. Their farm is about one-fourth of a mile off from the main highway, and it is reached by a pent road that runs from the main highway at the foot of a hill through a lane and a pasture to the buildings on the Green farm. The respondent owned an Essex car that had been registered for the year 1935.

On August 7, 1935, the respondent purchased the Dodge automobile in question from John Dollard who lived in Chippenhook about one and one-half or two miles from the Green farm. It was a touring car, 1919 model. It had not been operated after November, 1931, and it had not been registered for the year 1935. When the respondent purchased it, it was not in good mechanical condition, and it would not operate on its own power.

The Dollard premises are on the main highway. There is a hill in the main highway that descends from the Dollard place. The respondent and Harold Green moved the Dodge car from the Dollard place in the evening of August 7.

They pushed the car from the Dollard garage into the highway and to the top of the hill until it would travel down the hill solely by reason of its own weight and the law of gravitation. The respondent then got into the car and steered it down the hill, and at the same time regulated its rate of speed by applying its brakes, which were in good mechanical condition. When the car arrived at the foot of the hill it was towed to

the place where the pent road intersected the main highway and left by the side of the highway. Later, it was moved to the Green farm by a team of horses.

It was a little over one hundred feet from the Dollard garage to the foot of the hill where the Essex car was attached to the Dodge car. One-third of that distance is the distance the Dodge car was pushed on the Dollard premises from the Dollard garage to the highway. The remaining two-thirds of that distance, approximately seventy feet, is the distance the Dodge car traveled down the hill in the highway while the respondent was steering it and regulating its rate of speed by applying the brakes.

The respondent testified on cross-examination as follows:

"Q. This black Dodge touring car was present on the main highway?

A. Yes.

Q. Part of the time in motion?

A. Yes.

Q. And part of the time at rest on the highway?

A. Yes.

Q. And while that was on the main highway, did you do anything connected with the presence and operation of a motor vehicle on that highway? Did you test the brakes?

A. Yes, you would have to use brakes going down hill.

Q. And that is what you did?

A. Yes.

Q. On the public highway?

A. Yes.

Q. And you knew that the car was not registered?

A. Yes, * * *.

Q. You talked with him (Rovetti, a witness for the State) about operating the car on August 7th?

A. He said I was operating.

Q. And you told him you had?

A. I told him I steered the car from Dollard's to to the foot of the hill.''

On redirect examination, the respondent testified as follows:

"Q. Did you do anything else other than push the
     car and later tow it?
A. I used the brakes going down hill.
Q. Those things are the things you did when you
     say that you operated the car that day?
A. Yes."

The inability of the Dodge car to operate on its own power was a temporary and not a permanent condition. It appears from the testimony of the respondent that several days after the Dodge car was moved to the Green farm it was put in condition so that it would operate on its own power. It was used on the farm for mowing grass and taking milk from the farm down to a stand on the main highway. It was in condition so that it could be operated on the highway, but it was in poor mechanical condition. The respondent intended to have the Dodge car put in good mechanical condition and registered so that it could be legally operated upon the highways of the State.

P. L. 5018 provides that a person shall not operate a motor vehicle on any highway unless such vehicle is registered as provided in chapter 209 of the Public Laws. P. L. 4986 defines the word "operate" as follows:

       " 'Operate,' 'operating' or 'operated' as applied to motor vehicles shall include an attempt to operate, and shall be construed to cover all matters and things connected with the presence and use of motor vehicles on the highway, whether they be in motion or at rest."

■ P. L. 4986 provides that " 'motor vehicle' shall include all vehicles propelled by power other than muscular power," with certain exceptions which are not material here. It is plain that the Dodge car was a motor vehicle within the meaning of that definition, for, as it is said in *State* v. *Tacey,* 102 Vt. 439, 441, 150 Atl. 68, 69, 68 A. L. R. 1353:

       "Manifestly it was the design, mechanism and construction of the vehicle, and not its temporary

condition, that the Legislature had in mind when framing the definition of a motor vehicle. Neither the authorities nor sound logic admit of a different conclusion.''

■ The respondent has briefed the case on the theory that all he did to the Dodge car was to push it into the highway at a time when it could not be operated on its own power, and, when it arrived at the foot of the hill solely by reason of its own weight and the law of gravitation, to tow it to the place where the pent road intersected the main highway. If that were all that he did, there might be some merit to his contention that those acts alone did not constitute the operation of a motor vehicle within the meaning of the statute. It is not necessary to pass upon that question as it appears that the respondent did more than to push the Dodge car into the highway and later tow it. The respondent admits that when the Dodge car was descending the hill solely by reason of its own weight and the law of gravitation, he was keeping it in the highway by steering it and regulating its rate of speed by applying its brakes. Those are the acts of operation of the Dodge car upon which the State relies for a conviction. That those acts constituted the operation of a motor vehicle within the meaning of the statute appears from the language of the statute. As there is no dispute as to those acts of operation of the Dodge car, we hold, as a matter of law, that they constituted the operation of a motor vehicle within the meaning of the statute; and, as the Dodge car was not registered for the year 1935, such operation of the Dodge car was a violation of the provisions of P. L. 5018. The respondent's motion for a directed verdict was properly overruled.

■ As we hold, as a matter of law, that the acts of the respondent constituted the operation of an unregistered motor vehicle on the highway, it necessarily follows that all the questions presented for review, other than those we have considered, are immaterial, and the rulings were harmless to the respondent.

*There was no error in the proceedings below, and the exceptions of the respondent are overruled. Let execution of sentence be done.*