## Commonwealth v. Westhafer

*Carl B. Shelley*, district attorney, and *James W. Reynolds*, assistant district attorney, for Commonwealth.

*William H. Dunbar, 3rd*, for defendant.

WOODSIDE, J., November 28, 1949.—These two cases grow out of the same set of facts and were heard and argued together. Westhafer was charged with operating a motor vehicle without an operator's license, and Beck with knowingly permitting her to operate his

motor vehicle without an operator's license. The disposition of the Beck case depends entirely upon the disposition of the Westhafer case. The Beck case comes before us after a hearing before a justice of the peace was waived, and the Westhafer case on appeal from justice of the peace, John R. Zoll, after defendant was found guilty of operating a motor vehicle without a license.

The evidence shows that Beck was the owner of a 1934 Chevrolet automobile. While operating it on the highway the block of the engine broke. The car was then towed to his home where it remained for several weeks. While the car was in this condition—"block broke", "the motor jammed" and the "car (not) capable of running itself", Beck took his 1934 Ford truck and towed the Chevrolet car on the public highway intending to take it to a junk yard about 11 miles from his home to be junked. Before arriving at the junk yard the towed car was involved in an accident with another car. At the time of the accident defendant Amelia Westhafer was at the wheel of the towed vehicle. She never had a license or learner's permit to operate a motor vehicle. This defendant Beck knew.

The question is whether in doing what she did, defendant Westhafer was "operating a motor vehicle".

Defendants contend Westhafer was not "operating a motor vehicle" because what she was doing did not amount to "operating" the vehicle and because the thing she was in was no longer a "motor vehicle".

A vehicle is defined in The Vehicle Code of May 1, 1929, P. L. 905, sec. 102, as "Every device in, upon, or by which any person or property is or may be transported or drawn upon a public highway" excepting certain things not here relevant.

A motor vehicle is defined as "every vehicle, as herein defined, which is self-propelled", excepting certain things not here relevant: 75 PS §2.

We think the vehicle being towed was a "motor vehicle". It is true that at the time it was being towed it was not "self-propelled", that is, it was not being moved by the power of its own engine. But a motor vehicle does not cease to be one when it ceases to be self-propelled. If that were true, a parked car would cease to be a motor vehicle, and so would one which was being "propelled" down hill by gravity. In other words to hold that a vehicle was a motor vehicle only while it was being propelled under its own power would be to hold that any time the engine is not pulling or "propelling" the car it ceases to be a motor vehicle. This is not a reasonable construction. Interpretations of a statute must be reasonable: Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552(1).

The term "self-propelled", as used in The Vehicle Code, is descriptive of the type of vehicle, rather than the use that is being made of such vehicle at a particular time.

At the time the car was being towed it was incapable of being propelled under its own power. But a motor vehicle does not cease to be such at the instant its motor becomes incapable of operation. A car without an ignition key, or with no gas in the tank, or with a dead battery, or a blown fuse, or a burned wire, or a broken block does not lose its identity as a motor vehicle. The legislature did not intend to make a motor vehicle chameleonic.

A Vermont statute defines a motor vehicle as a vehicle "propelled by power other than muscular power". Its Supreme Court in State v. Lansing, 108 Vt. 218, 184 Atl. 692, 694 (1936), said, quoting from a prior case:

" 'Manifestly it was the design, mechanism and construction of the vehicle, and not its temporary condition, that the legislature had in mind when framing

the definition of a motor vehicle. Neither the authorities nor sound logic admit of a different conclusion.' "

Presumably the car here in question was titled as a motor vehicle. At least there was no evidence to the contrary. The Vehicle Code of May 1, 1929, P. L. 905, as amended, makes provision in section 210 for the junking of motor vehicles. It provides that "any owner, who sells a motor vehicle . . . to be destroyed or junked, shall assign the certificate of title thereto to the person to whom the motor vehicle . . . is sold, but shall return such assigned certificate of title to the department immediately, with an application for a certificate of junk, whereupon the department shall issue to the person shown as the assignee a certificate of junk which shall authorize the holder thereof to possess, transport . . . such junked motor vehicle . . ." (75 PS §40).

The 1934 Chevrolet automobile with its "jammed motor" was still a "motor vehicle".

And defendant Westhafer was "operating" the motor vehicle.

An operator is defined in The Vehicle Code, supra, as "Every person who is in actual physical control of a motor vehicle or tractor upon a highway": 75 PS §2. The operation of the towed car required someone to steer it and to operate the brakes. One who does this has actual physical control of the vehicle and is an operator.

The operator of a motor vehicle does a number of things in the exercise of actual physical control of the vehicle. Ordinarily his chief concerns are in applying the power to make it move, in steering and in braking. There are others, of course, such as illuminating the highway, blowing the horn, etc. It is not necessary for a person to perform all these functions in order to be

an operator of the motor vehicle. It is not even necessary to be doing all of what we might call the primary functions of an operator—steering, braking and running the motor.

In State v. Roberts, 139 Me. 273, 29 A. (2d) 457 (1942), it was held that where only the rear wheels of an automobile being towed up an icy grade had contact therewith, an intoxicated person, who ran the motor of the towed automobile to assist the towing, was "operating a motor vehicle", even though the direction of neither vehicle was thereby affected. "The operation," (intended to be curtailed) said the court, "is not required to be either complete or extended."

In Commonwealth v. Clarke, 254 Mass. 566, 150 N. E. 829 (1926), it was held that it was not necessary that the engine be running to make a defendant guilty of operating an automobile while intoxicated and that the manipulation of the gears of a standing automobile so as to permit it to move forward by its own weight was operating the automobile.

The best authority called to our attention or that we could find on the question before us is the case of Commonwealth v. Riehl, 23 D. & C. 110 (1935). In that case defendant could not start the engine of his car and had some friends push him several blocks to his home. He was charged with operating a motor vehicle while under the influence of liquor. He was found guilty and the court sustained the conviction holding that even though the vehicle was temporarily incapable of being self-propelled and was being pushed by another car, nevertheless defendant was "operating a motor vehicle".

President Judge Atlee, speaking for the court said, on page 115:

"Penal statutes must be construed strictly but this means no more than that the statute is to be inter-

preted according to its language. In interpreting any act, the courts always must bear in mind the mischief and the remedy intended to be applied by the act. It is the duty of the court to take such construction of the statute as shall suppress the mischief and advance the remedy."

The court reviewed cases from Iowa, Massachusetts, New York, New Jersey and Vermont to support its position. Among those cited was State v. Tacey, 102 Vt. 439, 150 Atl. 68 (1930), where it was held that a defendant who guided his automobile while it was being towed by another car was operating a motor vehicle within the statute prohibiting the operation of a motor vehicle by an intoxicated person.

Operating a towed car requires a high degree of skill. It is at least as difficult to steer as one operated under its own power. Brakes must be used quickly and accurately. The operator is under a duty to know and give the signals required of the operator of a motor vehicle: 5 Am. Jur. 686, 30 A. L. R. 750, and cases there cited.

The legislature must have intended that the person at the wheel of a towed motor vehicle be a licensed operator for otherwise it would be lawful for a small child or one totally unfamiliar with a motor vehicle to perform this function to the danger of all users of the highway.

In determining the meaning of statutes the court must consider the mischief to be remedied, the necessity of the law and the consequences of a particular interpretation: Statutory Construction Act, supra, 46 PS §551.

Defendants have cited in support of their position three cases: Wolcott v. Renault Selling Branch, Inc., 175 App. Div. (N. Y.) 858, 162 N. Y. S. 496 (1916); Dewhirst et al. v. Connecticut Co., 96 Conn. 389, 114

Atl. 100 (1921), and State Farm Mutual Automobile Insurance Co. v. Coughran, 92 F.(2d) 239 (1937).

In the Dewhirst case a truck was towed in front of a garage. There the tow rope was removed and the car which had towed it was changing position so that it could push the disabled car. While the disabled car was in this position it was struck by a trolley car.

The person in the disabled car was not licensed as an operator, and the question was whether the "vehicle was being operated by him". The court said: "At the time of the collision he had nothing to do with its movement or position." Under the facts of that case the conclusion was sound on the ground that *at the time* of the accident the car was not being operated by anyone.

It would be hard to find two decisions in which the reasoning is more difficult to follow than the other two cited by defendant.

It will suffice to quote briefly from the Coughran case, supra, at page 241:

"The thirteen year old minor passenger (not licensed as an operator) weighing 125 lbs., mentally and physically fit, 'a clever driver', requested permission to drive, was permitted to sit behind the wheel, took charge of the operating mechanism of the car, and Mrs. Anthony sat on the seat beside her . . . and told the minor to pass the truck and to increase the speed from 30 to 40 miles per hour. This remark shows that Mrs. Anthony used the passenger minor as her instrument in driving and the remark approves the course and speed, and that she was . . . the driver of the car."

From this the court concluded that the car was being operated by Mrs. Anthony, a licensed operator, and that a clause in an insurance policy which released the

company from liability when the car was being operated by an unlicensed person was not relevant because the car was being operated by a licensed person. A judge dissented.

The Wolcott case, supra, decided in 1916, held that the driver of a towed car which is not under power did not violate the statute forbidding a person to "operate or drive a motor vehicle as a chauffeur upon a public highway".[1] The writer of the opinion referred to the person in the towed car as "the driver of the towed car" in reciting the facts, and then concluded, "Here the steersman of the second car neither drove nor operated the car. All he was called upon to do was to steer it in the wake of a towing car, a duty which required no knowledge or skill in the manipulation of a motor driven vehicle". Thus we find in the opinion that "the driver of the towed car . . . neither drove nor operated the car". The statement that all the driver of a towed vehicle has to do is "steer it in the wake of the towing car, a duty which required no knowledge or skill in the manipulation of a motor driven vehicle", must be considered in the light of the inexperience with motor vehicles 33 years ago.

Section 601 of The Vehicle Code supra, provides that "no person . . . shall operate any motor vehicle upon a highway in this Commonwealth, unless such person has been licensed as an operator or a learner . . .": 75 PS §161. Defendant Westhafer violated this provision and was properly found guilty by the justice of the peace.

Section 622 of The Vehicle Code, supra, provides that "no person shall authorize or permit a motor vehicle owned by him, or under his control, to be operated by any person who has no legal right to do so

---

[1] The appellate court reversed on other grounds (223 N. Y. 288, 119 N. E. 556).

. . .": 75 PS §233. Defendant Beck violated this provision.

We are mindful of the fact that automobiles by the use of certain towing equipment are capable of being safely and legally towed by another car without any operator in the towed vehicle. This, however, is not such a case.

And now, November 28, 1949, defendant George S. Beck is declared guilty and sentenced to pay the costs of prosecution and a fine of $25 and the appeal of defendant, Amelia Westhafer, is dismissed; costs to be paid by her.