90 N.J. Super. 442 (1966)
217 A.2d 909
ROBERT J. PATRICK, PLAINTIFF,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 28, 1966.
*444 Messrs. Dimon, Haines & Bunting, attorneys for the plaintiff (Mr. Dominick J. Ferrelli, appearing).
Mr. Edgar E. Moss, II, attorney for defendant.
*445 WOOD, A.C., J.C.C. (temporarily assigned).
This case presents the question whether or not a policy of automobile liability insurance issued to plaintiff by defendant State Farm Mutual Automobile Insurance Company extended to and covered the automobile which plaintiff was driving at the time of an accident.
The facts are stipulated.
On February 16, 1959 defendant State Farm issued a policy of insurance to plaintiff, insuring him against liability for personal injuries and property damages to others resulting from the ownership and operation of a 1952 Nash sedan, of which the plaintiff was then the owner. The policy was in conventional form, insuring plaintiff as owner of said Nash automobile, with limits of $10,000 for injuries to one person and $20,000 for injuries arising out of one occurrence, and $5,000 for property damage resulting from one accident.
The provisions of the policy which are crucial in this action are as follows:
"Automobile  means the private passenger automobile, utility automobile or trailer described in the declarations and includes a temporary substitute automobile and a newly acquired automobile * * *.
Newly acquired automobile  means an automobile, ownership of which is acquired by the named insured if (1) it replaces an automobile owned by the named insured and covered by this policy, or the company insures all automobiles owned by the named insured on the date of its delivery, and (2) the named insured notifies the company within thirty days following such delivery date. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."
On or about March 1, 1959 plaintiff returned the 1952 Nash sedan identified in the policy, to the vendor thereof, and received on the same date from said vendor a 1949 Cadillac. This transaction was not reported to defendant.
On or about March 15, 1959 plaintiff returned the 1949 Cadillac to the vendor, and on the same date received from the vendor a 1951 Chrysler. This transaction likewise was not reported to defendant.
*446 On or about May 15, 1959 plaintiff returned the 1951 Chrysler to the vendor and demanded the return of his money. Thereafter, for a short period of time, plaintiff did not own any operable automobile. The return of the Chrysler was not reported to defendant.
In the meantime, sometime between February 16, 1959 (the date of commencement of the policy period) and June 11, 1959, plaintiff acquired a 1948 red Ford pick-up truck without a motor, and thus inoperable, and had it towed to his residence. The acquisition of the pick-up truck was not reported to defendant.
After the return of the 1951 Chrysler to the vendor, plaintiff purchased a 1948 used Ford motor from a junk yard and installed it in the frame of the pick-up. After this installation he immediately sold the pick-up truck to a used car dealer and with a portion of the proceeds purchased on June 11, 1959 a 1949 Chevrolet pick-up. On the evening of the same day, and before the acquisition of the Chevrolet was reported to defendant, plaintiff, while driving the said Chevrolet pick-up, was involved in an accident in Somerville, New Jersey. Notice of the happening of the accident was immediately given to defendant through a duly authorized agent of the company. The notice was given within 30 days after June 11, 1959.
On or about May 15, 1960 plaintiff was served with a summons and amended complaint joining him as an added defendant in an action for damages arising out of the accident of June 11, 1959. The action was brought by Herbert Ewan, a minor, by his guardian ad litem, et al., in the Superior Court, Law Division, and bore Docket No. L-8139-59. Plaintiff forthwith forwarded the summons and amended complaint to defendant. Defendant returned the papers to plaintiff accompanied by a letter dated May 19, 1960, disclaiming liability.
Plaintiff engaged counsel to defend him in said action. The suit, consolidated with others arising out of the same accident, was tried in Mount Holly before Judge McGann and a *447 jury, and on February 28, 1962 the jury returned a verdict in the total sum of $55,100 against several defendants, including plaintiff here. In proceedings subsequent to trial, judgment was entered in favor of Michael L. Kredowski and David P. Condict, defendants-crossclaimants in said action, and against Robert J. Patrick, plaintiff here, for $15,000. That judgment, bearing Docket No. J-15385-61, remains unsatisfied of record. Plaintiff demanded of defendant that it pay the sum of $10,000, the limit of its policy liability, in partial satisfaction of said judgment, but defendant refused. Defendant has never offered and does not now offer to return the unearned premium or any portion thereof to plaintiff.
It was further stipulated that, at the time of the accident, plaintiff was driving his pick-up on the business of and as the agent of the aforesaid Kredowski and Condict, trading as Contented Warden Service, who normally supplied plaintiff with a vehicle for use in his employment. Plaintiff could have used such vehicle but chose instead to use his own. The crossclaim of Kredowski and Condict against Patrick was on the theory that he was under a contractual duty to indemnify them. In view of the subsequent judgment entered against plaintiff, any question as to his personal liability in the accident litigation would appear to be moot.
It is clear that the accident occurred within the policy period. Defendant, nevertheless, denies liability upon the grounds that:
(1) The vehicle involved in the accident was not a "newly acquired automobile" because it was not a "replacement" for an automobile owned by the insured and covered by the policy;
(2) Plaintiff-insured failed to give notice of the acquisition of the vehicle in question, as required by the policy.
I shall deal with those contentions in that order.
1. In my opinion the pick-up truck was a replacement vehicle. It is clear that plaintiff never, during the period in question, owned more than one operable vehicle at a time. The Nash described in the policy was replaced by *448 the Cadillac, which was in turn replaced by the Chrysler. The parties stipulate that the red pick-up truck without a motor was acquired by plaintiff sometime between February 16, 1959 and June 11, 1959. Conceivably, plaintiff acquired this while he was the owner of one of the vehicles mentioned. But before he made it operable by acquiring and installing a motor, plaintiff had disposed of the Chrysler, so that when it became operable the Ford was his only vehicle. Until that time it was not an automobile within the meaning of the policy. An automobile is just what its name implies  a self-propelled vehicle capable of being operated on the streets and highways. The motorless truck body was simply that and no more. Without an engine it was inert and useless. It became an automobile when plaintiff acquired and installed a motor, and was then his only automobile. As an automobile, therefore, it replaced the Chrysler. When plaintiff sold it, he replaced it by purchasing the Chevrolet pick-up which was involved in the accident. Never at any time did he own more than one operable vehicle. It follows that each was a replacement for its predecessors. Cf. Maryland Indemnity & Fire Ins. Exchange v. Steers, 221 Md. 380, 157 A.2d 803 (Ct. App. 1960).
Defendant argues that the Chevrolet pick-up was not a replacement because it was not a vehicle "of equivalent use" with the passenger automobiles. The court must disagree. The policy defines "automobile" as "the private passenger automobile, utility automobile or trailer described in the declarations and includes * * * a newly acquired automobile * * *" "Utility automobile" is defined as: "An automobile with a load capacity of fifteen hundred pounds or less of the pick-up body, sedan delivery or panel truck type."
Clearly, these definitions equate pick-up and private passenger automobile under the generic head of automobile, for purposes of coverage. There is no requirement that the replacement be "of equivalent use."
*449 The Delaware case of Nationwide Mutual Ins. Co. v. Mast, 2 Storey 127, 153 A.2d 893 (Super. 1959), does not support defendant's contention. It merely held that a tractor-trailer acquired by the policyholder in substitution for a stake body truck was a replacement within the meaning of the policy. Indeed, the consideration of "equivalent use" was raised simply by way of dictum to support the court's conclusion. Here there is no apparent reason why the use of a passenger automobile and a pick-up cannot be equivalent. Passenger automobiles are widely used for commercial and business purposes. And, by the same token, pick-up type trucks are frequently used for private passenger use. I deem the purpose for which the pick-up was being used at the time of the accident to be immaterial.
2. I turn to the question of notice. The definition of newly acquired automobile as it relates to notice must again be referred to:
"* * * an automobile, ownership of which is acquired by the named insured if (1) it replaces an automobile owned by the named insured and covered by this policy * * * and (2) the named insured notifies the company within thirty days following such delivery date. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile." (Italics supplied)
Defendant contends that, assuming the vehicle was a replacement within the meaning of the policy, plaintiff is still not covered because of his failure to give notice of its acquisition as required.
It is true that, following the disposition of the Nash, the plaintiff failed to give notice of his acquisition of a series of vehicles, and that, at the time of the accident, more than 30 days had elapsed since the Nash, the vehicle described in the policy, had been disposed of. But the clause above quoted does not require that notice be given of the disposition of the vehicle described in the policy. It requires merely notice of the acquisition of the replacement automobile. This notice is to be given within 30 days of the delivery date of the replacement *450 automobile. The words used in the definition clause, i.e., "the date of its delivery" and "such delivery date," can have no other meaning. The pronoun "it," as used throughout the clause, refers only to "the newly acquired automobile."
Clearly, 30 days had not elapsed following the delivery date of the Chevrolet which was involved in the accident. Did the failure of the plaintiff to give notice of the acquisition of the intervening vehicles operate to negate and deprive him of coverage on the Chevrolet?
The cases have repeatedly held that under policy provisions similar to the one here construed, the insurance on a newly acquired vehicle is automatic, regardless of notice, for 30 days following the acquisition of the replacement vehicle, or for such longer or shorter period as the policy may provide. Indeed, some policies provide automatic coverage for newly acquired vehicles during the life of the policy. See National Union Fire Ins. Co. v. Falciani, 87 N.J. Super. 157 (App. Div. 1965).
"The purpose of automatic insurance is to give coverage to persons who are already insured with the company in question upon acquiring a new vehicle. The coverage extends to the new acquisition when it replaces the sole automobile owned by the insured. * * *" 7 Appleman, Insurance Law & Practice, § 4293, p. 84.
Although it has earlier been held that the requirement of notice is a condition precedent to liability, so that failure to give such notice within the allotted time would relate back to cut off a possible intervening policy protection, the more liberal view, and that which must be adopted by this court, is that interim coverage is automatic and gives protection in all events, at least during the notice period, whether or not during such period notice has been given. Appleman, supra, at p. 87. Horace Mann Mut. Cas. Co. v. Bell, 134 F. Supp. 307 (W.D. Ark. 1955); General Ins. Co. of America v. Western Fire, etc., Co., 241 F.2d 289 (5 Cir. 1957); Western Cas. & Surety Co. v. Lund, 234 F.2d 916 (10 Cir. 1956); and compare National Union Fire Ins. Co. v. Falciani, supra, where, under a policy extending automatic protection to newly acquired *451 vehicles, coverage on such a vehicle was not forfeited by failure to give notice within the policy period, despite a requirement that the insured should "inform the company during the policy period" of such change.
In the present case, notice of the acquisition of the Chevrolet pick-up was given well within 30 days following its acquisition. If automatic coverage extended to the Chevrolet, the fact that such notice was given after the accident is immaterial. As stated above, the policy does not require that notice be given of the disposal of the old automobile. It requires merely that the newly acquired vehicle be a replacement and that notice be given of its acquisition within 30 days following its delivery date. It is clear that the notice requirement has been met unless failure to give notice of the acquisition of the other replacement vehicles operated to void the coverage.
Defendant contends that plaintiff's failure to give notice of his intervening acquisitions did just that, and it cites Schaller v. Aetna Cas. & Surety Co., 280 App. Div. 988, 116 N.Y.S.2d 729 (App. Div. 1952), in support of its contention. However, in that case the policy contained a provision that the insurance "terminates upon the replaced automobile on such delivery date" (i.e., the delivery date of the newly acquired automobile). In that case the vehicle described in the policy was a Studebaker, which the insured replaced with a Chrysler. More than 30 days after acquiring the Chrysler, and without giving notice of its acquisition to the company, he disposed of it, and for a time was without a car. Then he bought a Ford and, within 30 days of its acquisition but prior to the giving of notice, the Ford was involved in an accident. The court held that, the insurance on the Studebaker having terminated and notice of the acquisition of the Chrysler having not been given within 30 days, there was "no insurance applicable either to the Studebaker or the Chrysler which could be applied to the Ford."
The Schaller case is readily distinguishable from the case sub judice. Here the policy contains no provision for termination of coverage on any vehicle. It provides for automatic *452 coverage on a newly acquired vehicle for a 30-day period following the acquisition of such vehicle. The plaintiff had purchased insurance against liability for a specified period. That period had not expired. There is no language in the policy providing for termination of coverage prior to expiration of the policy period, and it follows necessarily that coverage was not terminated. Had plaintiff disposed of the Nash and acquired no other vehicle until his acquisition of the Chevrolet pick-up, beyond peradventure the Chevrolet would necessarily have been covered by the policy, since all that is required is that the vehicle be a replacement and that notice of acquisition be given within 30 days following such acquisition. In my opinion the mere fact that plaintiff in the interim acquired, used and disposed of certain other automobiles without giving notice to the company, does not alter or derogate from his rights as to this vehicle. In point of fact, the company was subjected to no claim or loss by reason of this circumstance. Its position was not altered or prejudiced in any way. The Chevrolet pick-up was a newly acquired vehicle and covered as such, no matter how many other replacements intervened during the policy period.
Moreover, there appears to be no reason for the requirement of notice except for adjustment of premium. The provision respecting newly acquired automobiles concludes with the requirement that the insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile.
In Schaller v. Aetna Cas. & Surety Co., supra, the court pointed out that there was evidence that the company was there concerned with the age and condition of the insured automobile  a fact revealed by notations on the policy application as to the age and condition of the described automobile. No such concern appears here. The policy application is not in evidence. It does not appear that defendant here ever made any demand for premium adjustment.
In Hunt v. Hospital Service Plan of New Jersey, 33 N.J. 98 (1961), the Supreme Court, speaking through Mr. Justice *453 Francis, expressed the pertinent principles of judicial construction of insurance policies. The court said:
"The quest for the significance of language employed in an insurance contract is always engaged in with certain basic tenets in mind. Wherever possible the phraseology must be liberally construed in favor of the insured; if doubtful, uncertain, or ambiguous, or reasonably susceptible of two interpretations, the construction conferring coverage is to be adopted. And exclusionary clauses of doubtful import are strictly construed against the insurer. Boswell v. Travelers Indemnity Co., 38 N.J. Super. 599, 605, 120 A.2d 250 (App. Div. 1956); Schneider v. New Amsterdam Cas. Co., 22 N.J. Super. 238, 92 A.2d 66 (App. Div. 1952)." (at p. 102)
The above principles were reiterated with approval in Bauman v. Royal Indemnity Co., 36 N.J. 12, 21 (1961).
See also Small v. Schuncke, 42 N.J. 407 (1964), where the court referred to
"* * * the legislative goal of providing certain and maximum coverage to effectuate the policy of encouraging collectibility of damages wrongfully inflicted in the operation of motor vehicles." (at p. 412)
The construction placed on the present policy is, I feel, in line with the foregoing criteria, is calculated to effect, in this case, the goals of maximum protection and coverage, and is in strict accord with the terms of the policy itself.
One further point should be briefly noted. Notice of the accident was given to defendant immediately following its occurrence. The accident was a serious one, obviously requiring immediate and thorough investigation. Yet the company did not disclaim liability or give plaintiff any inkling of its intention to do so until after suit was commenced, some 11 months later. Then, and only then, was plaintiff made aware of his personal exposure and forced at once to seek the services of personal counsel and assume the expense of defending himself. Counsel was then faced with the task of undertaking, 11 months late, the investigation and preparation of the case for trial. In this situation it may well be contended, as plaintiff does contend, that the company is *454 estopped from asserting its disclaimer of coverage. See Ebert v. Balter, 83 N.J. Super. 545 (Law Div. 1964), in which Judge Hopkins, in an able and lucid opinion holding the company estopped in a not dissimilar situation, remarked:
"The carrier must seek the facts with reasonable diligence and make its determination to perform or withdraw from the action within a reasonable period under the circumstances."
I do not consider it necessary to decide the estoppel question in this case.
I conclude that the Chevrolet pick-up was a replacement vehicle and that notice of its acquisition was given in accordance with the requirements of the policy. It was therefore a newly acquired vehicle and as such the coverage of the policy extended to it.
Judgment will be entered in favor of the plaintiff and against the defendant for the sum of $10,000 and costs.
An order for judgment may be presented accordingly.