**ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Plaintiff,**

v.

**Robert G. STEVENS and Himeyo Date, Defendants.**

Civ. No. 2831.

United States District Court,
D. Hawaii.

May 28, 1970.

Alexander C. Marrack, Honolulu, Hawaii (Anthony & Waddoups, Honolulu, Hawaii, of counsel) for plaintiff.

Kazuo Oyama, Honolulu, Hawaii, for defendants.

## DECISION

TAVARES, District Judge.

The question presented to the Court is: "Is Allstate liable to defend defendant Stevens and respond in damages for injuries suffered by defendant Date as a result of an accident on January 17, 1968, wherein Date, a pedestrian, was struck at an intersection by a 1958 Volkswagen owned and driven by defendant Stevens." The Court answers the question in the affirmative.

The facts of this case present very little conflict. The defendant Robert G. Stevens, acquired a 1962 Oldsmobile in August of 1967. Insurance for this vehicle was issued by plaintiff Allstate Insurance Company on August 18, 1967, under liability policy No. 34 207T 279 08–18 (Ex. P–1, P–2) providing Bodily Injury coverage of $30,000/$85,000 for a term of one year.

Sometime in about March of 1967 defendant Stevens had purchased a 1958 Volkswagen Kombi, Station Wagon from the Taylor Agencies of Honolulu. A Certificate of Ownership was issued to Stevens under date of March 31, 1967 (Ex. P–5). A witness from the Taylor Agencies testified that this vehicle was in operable condition and had been in regular use by them until sold to Stevens. Stevens testified that the Volkswagen had defective brakes and needed motor work to such an extent that he and a friend towed the vehicle from Taylor Agencies to his home rather than risk operating it. It was moved short distances around and near Stevens' home over a period of several months before the necessary repairs were accomplished. Evidence presented to the Court was conflicting as to when the Volkswagen really became operable. The direct examination of Stevens suggested a period near Christmas of 1967, but cross examination produced answers by Stevens indicating a time as early as late August or September when he began to use the vehicle. The Court does not believe that this date is too crucial to the result reached herein. The Court does find, however, that the Volkswagen was not operable on August 18, 1967, when Allstate issued the policy covering the 1962 Oldsmobile. A representative of Allstate called at the Stevens home to verify the coverage which their policy undertook to provide. An internal memorandum, bearing a follow up date of 9/20/67 (Ex. D–2) indicates that Allstate was aware of the fact that Stevens was the owner of a Volkswagen in addition to the 1962 Oldsmobile and a company representative made inquiry regarding it. Mr. Kim, the Allstate Agent through whom the Oldsmobile policy had been purchased, was informed that the Volkswagen was not in use ("brake system is shot"). He was further informed that Mr. Stevens would add this vehicle to the existing policy when the car was repaired.

The only major factual dispute revolves about a request under date of January 8, 1968, whereby Stevens sought coverage for the Volkswagen under the policy previously issued as coverage for the 1962 Oldsmobile. A copy of a letter which Stevens testified he mailed to Allstate Insurance Company, Regional Office, 2882 Sand Hill Road, Menlo Park, California 94025, was received in evidence as (Ex. D–1). Stevens testified that he wrote this letter, retained the original which he had signed with a ballpoint pen so that his signature appeared on the carbon copy, and mailed the copy to the California address. Stevens is employed as a warehouseman and his mailing of the copy is understandable in light of the work he performs. The "burned copy" which was received in evidence was provided to the Insurance Company at the request of their adjuster probably sometime in January of 1968. Stevens was unable to produce the "original" from which he testified he had made the copy, explaining simply that he could not find it, and had probably thrown it away after giving a copy to the company. A witness from the Menlo Park Regional Office testified that the records of that office failed to disclose the receipt of any communication from Stevens similar to Exhibit D–1. Counsel for Allstate registered his belief in the incredulity of Stevens' testimony and suggested that Stevens demonstrate his ability to compose and type a letter. Stevens obliged with the production of Exhibit P–13, thereby also allaying any apprehensions which the Court may have entertained. Stevens probably does not conduct his affairs in the most orthodox manner, but the record in this case fails to cast any aspersions upon the reliability of his testimony. The evidence further discloses that Stevens had never before carried insurance.

The evidence presented is confusing as to when the Volkswagen actually became operable. No proof whatever was presented which tended to establish that the Volkswagen was driven on the roadways of Honolulu before the policy date of August 18, 1967. Allstate's own records tend to indicate that the company became aware of Stevens' ownership of a second

vehicle sometime in September of 1967 and after the policy date. Their inquiry revealed that the Volkswagen could not be driven at that time. Either Mr. or Mrs. Stevens was advised that the Volkswagen should be added to the policy which they had purchased as soon as it became useable. Plaintiff makes much of the fact that Stevens wrote to Menlo Park instead of merely using a telephone to advise Mr. Kim at the local Sears store, where the policy was purchased. Suffice it to say that Mr. Stevens was making payments to the Menlo Park office and certainly had an accurate and correct address for the company. Plaintiff also makes much of the fact that Stevens could have manufactured Exhibit D-1, the copy of the January 8, 1968 letter to Allstate. This is true, of course, but the fact is that this copy was delivered to Allstate's agent back in January of 1968. Had there been some legitimate doubt as to its authenticity, the doubt might better have been resolved at that time rather than waiting for its production in court in 1970. It is plausible for counsel to draw adverse inferences, but no showing whatever was made tending to establish positively that Exhibit D-1 was a fabrication.

■ On these issues the Court specifically finds that Stevens did own the 1958 Volkswagen on August 18, 1967, and that it was not in operable condition as of that date. The Court further finds that Stevens did mail a letter, of which Exhibit D-1 is a copy, to Allstate at its Menlo Park address on or about January 8, 1968. It follows that the defendant Stevens was entitled to the protection provided by the policy of insurance issued to him by Allstate at the time Stevens was involved in the accident of January 17, 1968, wherein, while driving the 1958 Volkswagen, he collided with or struck the defendant Date, who was then and there a pedestrian.

The Allstate policy provided automatic insurance coverage for any additional automobile—as might be owned by the named insured, and provided:

"(c) 'additional automobile' means an additional private passenger or utility automobile of which the named insured acquired ownership, provided notice of its delivery be given to Allstate within the policy term then current, or if delivery is within 30 days before the end of such term, then within 30 days after delivery."

■ Plaintiff's Trial Memorandum sets forth the basic proposition that the insurance policy means what it says:

"It appears to be well-settled that words or terms in an insurance policy, like the words or terms used in any other contract, are to be construed according to their plain, ordinary and accepted sense in the common speech of man unless it appears from the policy that a different meaning is intended." Teixeira v. Globe Indemnity, 349 F.2d 502 (9 Cir., 1965).

This Court subscribes to the above-quoted language and it would therefore appear that any vehicle which Stevens acquired after the commencement of the policy term, which was for the period of one year from August 18, 1967, to August 18, 1968, would be covered provided "notice of its delivery be given to Allstate within the policy term then current."

The language used makes no suggestion that notice was to be a condition precedent to coverage. Had such been the intention of the Company, different language would have expressed such a condition.

There is no question whatever, that Stevens purchased the Volkswagen, acquired a Certificate of Title, and took possession of the vehicle in March, 1967, before the commencement of the Allstate Insurance Policy term. Defendant cites the case of Glens Falls Insurance Company v. Gray, 386 F.2d 520 (5 Cir., 1967) wherein the appellate court held under a situation similar to those here presented that prior to making the required repairs, p. 524:

"the insured had *possession only* of an *unusable* automobile. The possession of an automobile needing major re-

pairs—which was not intended to be used and was not used until after the repairs were completed during the policy year—can hardly be thought to be ownership for liability insurance purposes, since the principal purpose of such insurance is to provide coverage for an automobile which is to be driven and which may become involved in an accident or other mishap. It would be highly unrealistic, for this type of insurance, to treat an automobile as having been acquired before it is operable."

■ The Court believes that the term "acquires ownership" must be construed to mean the acquisition of an operable automobile, and does so construe the policy issued to Stevens. It appears further that Stevens might have given the requisite notice to Allstate at any time between August 18, 1967 and August 18, 1968. Whether Allstate ever re-received the written notice mailed by Stevens or for that matter even if such a letter never in fact existed, there can be no question whatever that Allstate did receive actual notice of the facts soon after the January 17, 1968, accident, because their investigators were working on the case at least by mid-February of 1968 and clearly within the policy "term." A failure to notify the company of an acquisition or to apply for additional coverage when coupled with a failure to pay an additional premium becomes of import only as to coverage after an expiration of the "term" or the period otherwise within which notice be required. Hall v. State Farm Mutual Automobile Insurance Company, 268 F.Supp. 995 (DSC, 1966). Affirmed 378 F.2d 371 (4 Cir., 1967). In the Hall case the policy provided that an insured acquiring an additional automobile must apply for additional insurance on such automobile within 30 days of acquisition and must pay the additional premium as due thereon. The Court there held that an insured who did not apply for insurance on a newly acquired automobile within 30 days following its delivery and who had never paid an additional premium was nevertheless covered as to an accident involving that automobile prior to the expiration of the 30-day period.

The Court expressly finds that plaintiff is a corporation incorporated under the laws of Illinois and maintains its principal place of business in that state; that defendants are residents and citizens of the State of Hawaii; that the amount in controversy exceeds $10,000, exclusive of interest and costs.

Plaintiff's complaint seeks a declaratory judgment under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, thereby seeking a judgment that plaintiff's policy of insurance, issued to defendant Stevens, did not extend coverage to Stevens while driving the Volkswagen described above, and that plaintiff was not thereby obliged to defend Stevens or to respond in damages for any liability arising from the accident of January 17, 1968, in which the Volkswagen driven by Stevens was involved. This Court holds to the contrary of the relief sought.

In view of the foregoing, it is hereby ordered that plaintiff's complaint be and the same is hereby dismissed, costs to be allowed to Defendants.

In passing, the situation here presented is not greatly different from that which the United States Court of Appeals for the Fifth Circuit considered in the case of American Fidelity and Casualty Company v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company, 280 F.2d 453 (5 Cir., 1960). That Court expressed doubt as to its obligation to there render declaratory relief. This Court would arrive at the same result as expressed above were it to deny declaratory relief, because a dismissal of the complaint results from either approach.