NATIONWIDE MUTUAL INSURANCE COMPANY
*v.* SCHAVER, ADM'R OF THE ESTATE OF
EDWIN J. SCHAVER

[No. 161, September Term, 1972.]

*Decided February 8, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Hugh A. McMullen,* with whom were *William H. Geppert* and *Geppert & McMullen* on the brief, for appellant.

*Raymond G. Valle, Special Assistant Attorney General* and *Gorman E. Getty, Jr.,* with whom were *Edward J. Ryan* and *Carscaden, Gilchrist & Getty* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

The only question necessary for us to decide for the disposition of this appeal is whether the vehicle purchased by the insured of the appellant, Nationwide Mutual Insurance Company (Nationwide), was a "land motor vehicle" on May 8, 1969, or did not become such until May 20 or 23, 1969, when it became operable as a land motor vehicle.

The facts were, for the most part, the subject of a stipulation between the parties in the lower court and are not in dispute.

Nationwide issued an automobile insurance policy to its insured, John Eugene Grimes, on a 1969 Camaro owned by the insured. The coverage of the policy applied to all persons using the described automobile with the permission of the named insured and would pay on behalf of such user such sums of money he should become obligated to pay as damages because of accidental per-

sonal injuries or property damage arising out of such use up to $10,000. In Section IV, page 4 of the policy appears the following provision:

"Coverages—shall also apply to:

\* \* \*

"(b) a four wheel land motor vehicle, ownership of which is acquired by the Policyholder first named in the Declarations, and if an individual, his spouse residing in the same household, which has not, except as a replacement, been the subject of such ownership for more than 30 days next preceding the occurrence."

The policy also contains the following:

"II. Land Motor Vehicle:

"For purposes of this policy 'land motor vehicle' does not include a vehicle operated on rails or crawler-treads nor, except under Coverages C(1), C(2), D(1) and D(2), while actually upon public roads, does it include vehicles not subject to motor vehicle registration or vehicles maintained for use exclusively on the insured premises or vehicles designed for use principally off public roads."

On May 8, 1969, the insured, Grimes, purchased the body or shell of a 1957 Chevrolet, two-door sedan from Waneta G. Chiccarella, paying $50.00 for it. The seller then executed the assignment of the Certificate of Title to the purchaser. At that time, Mr. Grimes testified, the 1957 Chevrolet was only a body. It did not contain a motor, a transmission, interior wiring, seats or tires. He towed the body from Flintstone, Maryland, to Ridgely, West Virginia, on May 8, 1969; and on the same day, he executed and made oath to an application for a Certificate of Title for the 1957 Chevrolet to the Department of Motor Vehicles of West Virginia, inserting the correct serial number of the 1957 Chevrolet in the application. This application was subsequently sent in and a West

Virginia Certificate of Title and automobile tags were issued on May 26, 1969. He stated that he worked on the Chevrolet from May 8 to May 20, 1969, when he had completed the wiring of the vehicle, the installation of a transmission, seats, etc., and had installed an engine. On May 20, 1969, he said, the Chevrolet was able to be operated on the highway. He further testified that on May 23, 1969, he telephoned Ellsworth Lambert, an agent of Nationwide, and was informed by the agent that the policy he had on his 1969 Camaro would also cover any other motor vehicles he had acquired for a period of 30 days after he had acquired it.

On June 18, 1969, the named insured Grimes loaned the Chevrolet to his half-brother, Richard H. Edwards, Jr., who resided in the same household with his father and his step-brother, the insured Grimes. Mr. Edwards drove through a stop sign at the intersection of Mary Street and Ella Avenue in Cumberland and severely injured Edwin J. Schaver, then driving a motorcycle. Mr. Schaver's injuries eventually resulted in his death.

The appellee, Walter Schaver, administrator of the decedent's estate, and the decedent's parents filed an action against both Edwards and Grimes in the Circuit Court for Allegany County and obtained judgments in the total amount of $17,500.00. Demand was duly made upon Nationwide to make payments on these judgments under its policy. This demand was rejected by Nationwide and an action was instituted in the Circuit Court for Allegany County by the Administrator and the parents of the deceased against Nationwide and the Unsatisfied Claim and Judgment Fund Board (the Fund) to recover the amounts of the judgments.

The case was tried before the lower court (Naughton, J.), without a jury. The lower court first held in favor of Nationwide and ruled that the Fund was solely responsible for the payment of the judgments. Subsequently, however, upon hearing a motion for reargument, the lower court found that Nationwide was the insurer

of Edwards at the time of the accident and entered a judgment directing Nationwide to pay the plaintiffs below the sum of $10,000, the policy limit. This appeal was timely taken by Nationwide from this judgment. We have concluded that this judgment was correctly entered and it will be affirmed.

In our opinion, the words used in the policy "four wheel land motor vehicle" are clear and unambiguous. It is necessary to have a motor included in a vehicle to constitute it as a *"motor* vehicle." The purpose of the language, already set forth, establishing the coverage is to insure against losses resulting from vehicles which are capable of using highways in their operation and not some shell or body which cannot be *operated* on the highways. The definition of "Land Motor Vehicle," already set forth in full, is an exclusionary provision indicating what the term does not include in certain instances, rather than the usual type of definition. In short, that "definition" is of no help to us in the present case.

Our opinion in regard to the clear meaning of the term "Land Motor Vehicle" used in Section VI, page 4 of the policy, is consistent with the definitions of "Motor Vehicle" in both the Maryland and West Virginia Codes. In the Maryland Code (1970 Repl. Vol.) Art. 66½, § 1-149, "Motor Vehicle" is defined:

> "Motor vehicle means a vehicle which is *self-propelled* or propelled by electric power obtained from overhead trolley wires but not operated upon rails."
> (Emphasis supplied)

The provision of the West Virginia Code (1961, 1965 Cum. Supp.) is quite similar to the Maryland definition. Section 1721 (65) [17A-1-1]—"Definitions," subsection (b) of the West Virginia Code defines "Motor Vehicle" as follows:

> "Every vehicle which is *self-propelled* and every vehicle which is propelled by electric power obtained from overhead trolley wires, but

not operated on rails."
(Emphasis supplied)

It is apparent from the evidence that the 1957 Chevrolet when purchased by Grimes on May 8, 1969, was not "self-propelled," it having no motor, transmission or inside electrical wiring.

The insured, therefore, did not acquire ownership of a "Land *Motor* Vehicle" by his purchase on May 8, but only when the 1957 Chevrolet had a motor, transmission and inside electrical wiring on May 20 or 23, 1969, within 30 days of the accident. Edwards (and Grimes) were covered by the provisions of the policy and the trial court properly so held.

Our opinion in this regard is supported by several federal and state cases. *Glens Falls Insurance Co. v. Gray,* 386 F. 2d 520 (5th Cir. 1967) involved a question of coverage under the policy terms if the insured "acquired ownership" and gave notice to the insurer of such acquisition during the term of the policy. The insured, on February 20, 1961, purchased a 1955 Oldsmobile which needed major repairs to become operable and obtained automobile tags for it. February 20, 1961, was not within the policy term. Later, within the policy year, the insured performed major repairs on the Oldsmobile, got it into operable condition and indicated to the insurer that he wanted it covered by the policy. Later there was an accident involving the Oldsmobile and the insurer denied coverage. The District Court held that the insured had acquired ownership during the term of the policy. This holding was affirmed on appeal. Circuit Judge Washington stated for the United States Court of Appeals for the Fifth Circuit:

". . . here we are concerned with the year in which ownership was acquired for a particular purpose—that of automobile liability insurance. For this purpose, 'ownership' of the Oldsmobile in any meaningful sense was acquired during the policy period. The facts outlined above in-

dicate that, before the policy year began, the insured had *possession only* of an *unusable* automobile. The possession of an automobile needing major repairs—which was not intended to be used and was not used until the repairs were completed during the policy year—can hardly be thought to be ownership for liability insurance purposes, since the principal purpose of such insurance is to provide coverage for an automobile which is to be driven and which may become involved in an accident or other mishap. It would be highly unrealistic, for this type of insurance, to treat an automobile as having been acquired before it is operable."
(Emphasis by the Fifth Circuit)
386 F. 2d at 524.

*See also Allstate Insurance Co. v. Stevens,* 313 F. Supp. 819 (D. Ct. Hawaii, 1970), involving a Volkswagen station wagon which had defective brakes and needed motor work to be made operable, in which the United States District Court for Hawaii cited *Glens Falls* with approval and followed it.

In *Patrick v. State Farm Mutual Insurance Co.,* 90 N. J. Super. 442, 217 A. 2d 909 (1966), a 1948 Ford pickup truck, without a motor, was involved and was not repaired and made operable until within the time of coverage. The Court stated:

"Until that time [when the insured made the truck operable by installing a motor] it was not an automobile within the meaning of the policy. An automobile is just what its name implies—a self-propelled vehicle capable of being operated on streets and highways. The motorless truck body was simply that and no more. Without an engine it was inert and useless. It became an automobile when plaintiff acquired and installed a motor and was then his only automobile."
90 N. J. Super. at 448, 217 A. 2d at 912-13.

To the same effect, *see Civil Service Employees Insurance Co. v. Wilson*, 222 Cal. App. 2d 519, 35 Cal. Rptr. 304 (5th Dist. Ct. App. 1963), involving an "automobile" inherited by the insured and listed at no value and being without seats, a generator, starter or dashboard and only movable by towing, which was held not to be an "automobile" within the policy clause providing for automatic insurance. *See also Quick v. Michigan Millers Mutual Insurance Co.*, 112 Ill. App. 2d 314, 250 N.E.2d 819 (1969). *Cf. Weissberg v. N.Y. Uw. Insurance Co.*, 260 Md. 417, 272 A. 2d 366 (1971).

Nationwide relied on *Williams v. Standard Accident Insurance Co.*, 158 Cal. App. 2d 506, 322 P. 2d 1026 (1958); *Smith v. Stewart*, 21 App. Div. 2d 551, 251 N.Y.S.2d 342 (1964); *Ohio Auto & Truck Wrecking Ass'n v. Mainwaring*, 175 Ohio St. 497, 196 N.E.2d 584 (1964), *Bourgon v. Farm Bureau Mutual Insurance Co.*, 128 Vt. 593, 270 A. 2d 151 (1970); and *State v. Lansing*, 108 Vt. 218, 184 A. 692 (1936). We find all of these cases distinguishable from the present case and from the cases cited above in support of our opinion in that in none of the cases relied on by Nationwide was an engine missing. Admittedly, the problem is one of degree so far as the particular "automobile" involved is concerned and there may be close cases often determined by the finder of fact in the particular case. As indicated, however, the absence of a motor has been uniformly held to make the body inoperable and not a motor vehicle and, in several cases, not an "automobile."

Finding no error, we will affirm the judgment of May 12, 1972, of the lower court.

*Judgment of May 12, 1972, affirmed, the costs to be paid by the appellant.*