Marshall **MOODY**

v.

**Mark WILLIAMS and Richard Pervear.**

Supreme Judicial Court of Maine.

Oct. 29, 1979.

Monaghan & Leahy by Joan M. Kidman (orally), Thomas F. Monaghan, Portland, John L. Carver, Belfast, for plaintiff.

Paine & Lynch by Andrew M. Mead (orally), Bangor, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Is a disabled automobile being pushed on a public highway by human beings a "vehicle" that must comply with the statutory rules of the road? That is the sole question raised by defendants' appeal in this automobile negligence action. We answer that question in the affirmative, as did the Superior Court justice in charging the jury. Accordingly, we deny the appeal.

On Christmas eve, 1976, on a public way in Winterport, a collision occurred between a station wagon owned and operated by plaintiff Marshall Moody and a Ford Mustang owned by defendant Mark Williams. Just prior to the collision plaintiff Moody was driving his station wagon westward, and defendant Williams, assisted by his companion and now co-defendant Richard Pervear, was pushing the Mustang into the highway from a private driveway to the north. The Mustang had run out of gas and defendants had pushed it backwards into the driveway of a nearby house. Finding no one at home there and thinking that they would push the car to the next house to telephone for gasoline, defendants pushed it out from the driveway—unfortunately into the path of the oncoming station wagon. In the ensuing collision both automobiles were damaged, and defendant Pervear sustained physical injuries requiring hospitalization for more than three weeks.

Moody sued defendants for the property damage to his station wagon; and both defendants counterclaimed, Williams for the property damage to his Ford Mustang and Pervear for his physical injuries. After trial a Superior Court jury in Waldo County brought in a verdict for plaintiff Moody for $1,250 for his property damage and denied any recovery to defendants on their counterclaims against Moody. Both defendants appealed.

At trial the presiding justice instructed the jury that:

> The operator of a vehicle entering a public way from a private driveway, shall yield the right of way to all vehicles approaching on said public way, and before entering such public way, shall proceed cautiously into said public way.

He was obviously applying the rule of the road declared by 29 M.R.S.A. § 944 (1978). That section reads in pertinent part as follows:

> The driver of a vehicle entering a public way from a private . . . driveway . . . shall yield the right of way to all vehicles approaching on such public way and . . . before entering such public way . . ., shall proceed cautiously . . . into said public way.

For purposes of Title 29 the term "vehicle" is defined by 29 M.R.S.A. § 1(20) (1978), which reads as follows:

**Vehicle.** "Vehicle" shall include all kinds of conveyances on ways for persons and for property, including special equipment, except those propelled or drawn by human power or used exclusively on tracks or snowmobiles as defined in Title 12, section 1971.

Defendants contend that their disabled automobile comes within the exception to the definition of "vehicle", because, as they say, it was at the time of the collision a conveyance "propelled . . . by human power." We cannot agree.

■ Judicial construction of the statutory definition of "vehicle" must start by reading the statute. Before reaching the "human power" exception, the definition is cast in the most inclusive terms possible: "all *kinds* of conveyances on ways for persons and for property." (Emphasis added) The statutory emphasis is on "kinds" of conveyances, strongly suggesting that the characterization of a conveyance for purpose of inclusion within the term "vehicle" depends upon its design and customary mode of propulsion, rather than its state at any particular time. The antecedent for the pronoun "those" in the exception provided for "those propelled or drawn by human power" is "kinds of conveyances." Only the *kind* of conveyance that by design, construction, and customary use is "propelled or drawn by human power," such as a bicycle or a hand cart, is excepted from the comprehensive definition of "vehicle."

■ The specific exceptions that the statute makes to its broadly inclusive definition of "vehicle" are on their face limited in scope. Beyond the particular exception that defendants rely upon, we find only two exceptions: one for "those [kinds of conveyances] . . . used exclusively on tracks," and a second for snowmobiles. Given the broad sweep of the basic definition of "vehicle" and the limited nature of the only three exceptions, we are willing to apply the "human power" exception only where the statutory language unambiguously requires us to do so.

The definition of "vehicle"[1] derives from chapter 211 of the Public Laws of 1921, entitled "An Act Relative to Motor Vehicles and the Law of the Road."[2] *Id.* § 1. That legislation, consisting of 99 sections, was obviously intended to be a comprehensive regulation of "all kinds of conveyances on [public] ways for persons and for property." It set forth detailed rules of the road and provided for the registration of motor vehicles and the licensing of operators. Plainly, in the framework of that comprehensive legislation, an automobile did not cease to be a "vehicle" when it became disabled or for any reason was temporarily not moving under its own power. For example, the requirements for registration and equipment were not so limited: " . . . nor shall the owner or custodian of [any motor] vehicle permit the same to be operated, *or remain upon*, any way unless the same is registered and equipped in accordance with the provisions of this act." *Id.* § 43 (emphasis added). Section 4 forbade any person to "leave his vehicle stationary on a way so as to obstruct the free passage of other vehicles," a prohibition obviously intended to encompass an automobile temporarily out of gas. *See also* 29 M.R.S.A. § 1111 (1978).

Subsequent amendments of the motor vehicle laws, now codified in Title 29, provide further demonstration that the "vehicles" being regulated broadly include any that are of a *kind* not customarily propelled by human power or used exclusively on tracks, even if momentarily disabled. For example, other sections impose a duty on a driver who collides with an unattended vehicle (§ 897) and prohibit anyone's "open[ing] the door of a motor vehicle on the side available to moving traffic unless and until it is reasonably safe to do so" (§ 957). As a further example, the term "operator" is by section 1(8–A) defined to include anyone "who is . . . steering a vehicle being towed by

---

1. The exception for snowmobiles was a recent addition to the definition of "vehicle." P.L. 1969, ch. 414, § 3.

2. The portion of 29 M.R.S.A. § 944 that is here relevant derives from P.L.1929, ch. 327, § 24(b).

a motor vehicle." *See State v. Roberts*, 139 Me. 273, 29 A.2d 457 (1942) (O.U.I. conviction of person at the wheel of towed vehicle).

Disablement of an automobile for any number of reasons is not an unusual occurrence, but that temporary state does not diminish the necessity for conforming to established rules. Indeed, that temporary condition often gives rise to added concerns for the safety of other travelers, concerns that are legitimate reasons for legislative regulation of the disabled car. "The Legislature, through the enactment of statutes [such as the rules of the road, including section 944], prescribes rules designed to safeguard travelers . . .." *Nadeau v. Perkins*, 135 Me. 215, 216, 193 A. 877, 878 (1937). If we were to adopt defendant's construction of the word "vehicle" we would not be construing "the legislative language . . . to have such meaning as shall appear most reasonable and best suited to accomplish the objects of the legislation." *State v. Heald*, Me., 382 A.2d 290, 294 (1978). We are sure that our legislature set out in Title 29 to regulate *all* the hundreds of thousands of trucks and cars that are at times on the Maine highways— without excluding any that may be temporarily inoperable.

As the Vermont Supreme Court stated in construing the definition of "motor vehicle" in all respects here relevant identical to the Maine definition of "vehicle":

> Manifestly it was the design, mechanism, and construction of the vehicle, and not its temporary condition, that the Legislature had in mind when framing the definition of a motor vehicle. Neither the authorities nor sound logic admit of a different conclusion.

*State v. Tacey*, 102 Vt. 439, 441, 150 A. 68, 69 (1930) (O.U.I. conviction of person steering his car being towed by a truck). Courts that have addressed the question whether rules of the road apply to pushed automobiles have uniformly held that they do. *Arellano v. Moreno*, 33 Cal.App.3d 877, 109 Cal.Rptr. 421 (1973); *Duckett v. State*, 108 Ga.App. 317, 132 S.E.2d 811 (1963); *State v.*

*Lansing*, 108 Vt. 218, 184 A. 692 (1936). *See also People v. Jordan*, 75 Cal.App.3d Supp. 1, 142 Cal.Rptr. 401 (1977) ("driver" of moped pedaled it with motor turned off).

The entry must be:

Appeal denied.

Judgment affirmed.

GLASSMAN, J., did not sit.