**CANAL INSURANCE COMPANY**

v.

**J. C. BROOKS, Jr., Willard O. Martin, Mrs. Doris Martin, Margaret Ann Martin, Mickey Lane Martin and Ernestine Hemphill.**

**Civ. A. No. 7754.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Jan. 23, 1962.

Thomas M. Hayes, Jr., Hayes, Harkey & Smith, Monroe, La., for plaintiff.

Sidney E. Cook, Cook, Clark, Egan, Yancey & King, Shreveport, La., Julian E. Bailes and Gerard F. Thomas, Jr., Natchitoches, La., Cas B. Moss, Moss & Moss, Winnfield, La., John Makar, Natchitoches, La., R. C. Martin, Nelken & Martin, Natchitoches, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

Canal Insurance Company (insurer) brings this action for a declaratory judgment (28 U.S.C.A. §§ 2201, 2202), against (1) J. C. Brooks, its insured under a certain automobile liability insurance policy issued on May 23, 1959, and (2) persons (as well as their collision insurer) injured as a result of the alleged negligence of the insured while driving an automobile which the insured claims, and the insurer denies, was included within the coverage of the policy.

The policy, referred to as a "scheduled policy," contains the following terms prescribing "automatic coverage" for newly acquired automobiles:

"(4) *Newly Acquired Automobile* —an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, *or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery*, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; * * The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile." (Emphasis added.)

August 15, 1959, the insured purchased a used 1957 Ford automobile for use in his trucking business. August 17, 1959, while driving the Ford, he was involved in a collision with an automobile driven and occupied by the other defendants. August 21, 1959, Brooks notified plaintiff of the "newly acquired automobile," and it was added to the policy, an additional premium of $70.03 being paid and accepted. At the same time notice of the accident was given. On the date of issuance, May 23, 1959, the policy schedule listed the following units as owned by the insured: (1) one 1957 Chevrolet 2½-ton tractor truck, (2) one 1958 Dunham Dump Trailer, (3) one 1959 International V–195A truck, (4) one 1958 Dunham Dump trailer, (5) one 1959 International V–195 truck, (6) one 1959 Dunham Dump Trailer, (7) one 1956 Pontiac Fordor, and (8) one 1957 Pontiac Sedan. By endorsement dated June 5, 1959, but effective June 3, 1959, one 1956 Dorsey Trailer was added to the above schedule of coverage. No further endorsements were added prior to the accident.

The record shows that, upon the delivery date of the 1957 Ford, the insured owned four vehicles which were not scheduled under the policy, viz., (1) one Gator boat trailer, (2) one 1956 Nabors lumber trailer, (3) one Nabors semi-trailer, and (4) one Lufkin semi-trailer. We forego consideration of whether the 1957 Ford was a "replacement" for some other vehicle scheduled under the policy (because we do not believe it was) and decide whether, under the "automatic coverage" provisions for newly acquired automobiles, coverage resulted because

the company insured all automobiles owned by the insured on the date of delivery of the 1957 Ford, August 15, 1959.

Plaintiff alleges that "automatic coverage" was not extended to include the newly acquired 1957 Ford because the insured owned several vehicles which were not insured with the company; that the 1957 Ford was not a replacement for an already insured vehicle; that upon the date of the accident, it did not know of the uninsured vehicles owned by the insured; that it has been called upon to defend a suit in State Court against the insured and to pay any sum for which the insured may become obligated arising out of the accident of August 17, 1959. Accordingly, plaintiff seeks to be declared not liable to its insured (or persons injured in the accident or their collision insurer), and that it be held to be under no duty to appear and defend any suit(s) arising out of that accident.

We think that, under the terms of the policy, coverage was extended to include the 1957 Ford and conclude that plaintiff's argument must fall for the following reasons:

The Gator boat trailer was covered even though not listed on the policy schedule and was comprehended by the phrase "all automobiles owned by the named insured and such spouse on the date of delivery, * * *" This is shown by the testimony of Cody C. Beasley, general agent for plaintiff in Louisiana, who testified on direct examination as follows:

"THE WITNESS: It is not necessary to include a trailer if it has been abandoned—a truck or trailer. If it has been abandoned—not licensed—it is not compulsory.

"THE COURT: That is like the little boat trailer—

"THE WITNESS: If it has been abandoned.

"THE COURT: If you don't use it for business, you don't have to list it; is that right?

"THE WITNESS: That's right.

"THE COURT: In other words, you wouldn't schedule that on the policy?

"THE WITNESS: It is not even necessary.

"THE COURT: Thank you.

"BY MR. THOMAS:

"Q. If you come down to Natchitoches to go fishing or squirrel hunting, you wouldn't list your boat trailer on the policy—where you carry your dogs in?

"A. No.

"Q. You are covered?

"A. That's right."

Clearly, the Gator boat trailer was extended coverage under the policy due to the nature of its use, namely, pleasure and recreation. This is further borne out by the testimony of Willard W. Harlan, the insurance broker in Winnfield, Louisiana, with whom Brooks negotiated for the policy. Harlan testified as to his understanding of the distinction as follows:

"Q. * * * Would you consider the coverage on the small boat trailer to be necessary?

"A. It is determined by the use made of that trailer.

"Q. If it is used only for personal purposes and not commercial?

"A. What do you mean, 'personal'?

"Q. Putting a boat on it and taking it on the lake?

"A. *The way I understand the insurance policy*, if a trailer is not used for commercial or business purposes and if it is attached to an automobile, it becomes part of that automobile.

"Q. In other words, there would be no necessity for insurance separately on a small boat trailer or utility trailer?

"A. Precluding commercial use, it would not." (Emphasis added.)

Brooks testified undisputedly that the Gator boat trailer was used sole-

ly for pleasure purposes, including fishing and hunting, and that it was not used in connection with his trucking business or for commercial purposes. It follows, therefore, that coverage was extended to this trailer by the policy without a separate endorsement or scheduling.

Brooks' unscheduled Nabors and Lufkin semi-trailers were worn-out, unserviceable equipment, which had not been used for approximately six months prior to the accident.

Beasley testified on direct examination that he knew of the two "junk trailers" before countersigning the policy; that he was advised of their abandonment and that, if abandoned, it was unnecessary that they be scheduled. Coleman C. Taylor described these two trailers as follows:

"Q. Are you familiar at all with two trailers that were parked on one portion of his lot? .

"A. Yes, sir.

"Q. Did you have occasion to see them many times?

"A. Every day.

"Q. What were the condition of those trailers?

"A. Well, one of them—the body—the floor was all out of it and there was no tires on the one on the south side. The one on the front side had three tires, the best I remember.

"Q. Did they have the appearance of having been used recently?

"A. They hadn't been used for several months.

"Q. What was the condition of the lot surrounding the trailers?

"A. The grass was grown up around it and once in a while we cut it, which was very seldom.

"Q. Would you consider those vehicles operable without considerable repairs?

"A. They would have to have a lot of repairs in order to make them operable.

"THE COURT: Would you classify them as junk?

"THE WITNESS: Yes, sir, you could have. They would have had to have right smart repair on them. The fact of the business, the man who bought it had bought tires and refloored it and put brakes and all on it before he could use it."

Nothing short of a strained and highly technical construction of the policy would result in the conclusion that, despite the physical condition of these two trailers, it was necessary to schedule them in order to satisfy the requirements of the "automatic coverage" provision for newly acquired automobiles. There was no reason to include them in the policy because they were totally unserviceable. Brooks testified that it never occurred to him that the "junk trailers" should be scheduled under the policy, and we find without a doubt that his impression is entirely reasonable and understandable in light of what men of ordinary understanding would reasonably expect under these circumstances and from a reading of this insurance policy.

Harlan reached the same conclusion. Testifying as to his impressions relative to the two unserviceable trailers, he said:

"THE WITNESS: My recommendation to Mr. Brooks at the time was that they were not insurable because they were not operative at the time.

"BY MR. MAKAR:

"Q. Did they appear to you to be good trailers or junk trailers?

"A. Junk."

The insured's reasonable expectations will be protected in a case such as this. The intention of the parties being of paramount importance, it is to be determined in accordance with the plain, ordinary and popular sense of the language which they have used in the policy, and by giving consideration, on a practical, reasonable and fair basis, to the instrument in its entirety. Where the insurance company prepares the contract, the insured not having been consulted as to the form to be used, any doubt with reference to the meaning or

scope of its provisions must be resolved against the company and in favor of the insured. Collard v. Globe Indemnity Co., 50 So.2d 838 (1st La.App.1951), Jones v. Standard Life & Acc. Ins. Co., 115 So. 2d 630 (2nd La.App.1959) and authorities cited therein.

The 1956 Nabors lumber trailer owned by the insured but not scheduled under the policy was, at the time of acquisition and delivery of the 1957 Ford, under written lease to Melton Truck Lines of Shreveport, Louisiana. Prior to this, and at the time the policy was written it was leased to Papa's Truck Line. The lease agreement included a second vehicle, a Dorsey lumber trailer, and provided that Brooks, the lessor, would maintain both vehicles in proper mechanical condition and capable of providing the transportation intended; that the lessor would, at his own expense, provide insurance covering risk of loss or damage to the vehicles as a result of fire, theft, or any other casualty resulting in loss or damage thereto; *but that the lessee*, Melton Truck Lines, *would "maintain public liability insurance* in the amounts required by the regulatory bodies" and pay the cost of such insurance as the named insured. The two-year lease was terminable on thirty days' notice by either party or by mutual consent.

Public liability insurance was secured for both trailers by Melton Truck Lines and by Brooks on the Dorsey lumber trailer. Plaintiff argues that, notwithstanding the public liability insurance secured by Melton, the "automatic coverage" provisions for newly acquired automobiles, to be applicable, required Brooks to include the leased Nabors lumber trailer on the policy schedule and to pay an additional premium.

We do not agree. For Brooks to have maintained additional public liability insurance on the Nabors trailer would have been a wholly unnecessary duplication. Significantly, Brooks placed all of his public liability insurance for automobiles used in his trucking operations with Canal Insurance Company. No other liability insurance for Brooks' automobiles was contracted for at any time, commencing with the issuance of the policy, and continuing through the date of the accident. Harlan testified that Brooks discussed the "scheduled policy" with him and indicated a desire to have all of his equipment insured with plaintiff; that both the small Gator trailer and the leased trailers were discussed; and that Brooks did not withhold any information about the vehicles. Brooks testified that his only purpose in scheduling the Dorsey lumber trailer on the policy was to secure coverage for the time when he planned to re-enter the lumber business and put the Dorsey trailer back on the highways under his own Louisiana Public Service Commission certificate. The lease being terminable on thirty days' notice, Brooks would have been able to obtain and use his trailer without lengthy delays. He further testified that the Nabors lumber trailer was not scheduled under the policy because he did not anticipate a need for it if and when he re-entered the lumber business. Thus, he .concluded that Melton's insurance provided adequate coverage.

We believe that Brooks was both practical and reasonable in his belief that the trailer was adequately covered under the lease agreement. We further believe that a fair and practical interpretation of the policy supports our conclusion that the phrase "all automobiles owned by the named insured" does not contemplate a vehicle which is in such a position or condition that a reasonable person would not include it in a policy of public liability insurance. Because the "automatic coverage" provision inures to the insured's benefit is all the more reason why, under the liberal construction rule, every reasonable effort, not, however, amounting to a change in language, should be invoked to secure that benefit to the insured. See Collard v. Globe Indemnity Co., supra. Had the insured taken out additional liability insurance with another company, plaintiff's argument would be good and the policy provision would exclude automatic coverage.

Here, however, the insured made every reasonable effort to and did, in fact, include in the insurance policy issued by Canal, every "insurable" vehicle owned by him. The three vehicles not scheduled on the policy were not in condition or put to uses under which it would be unreasonable for the insured not to schedule them.

We have studied the cases relied on by plaintiff but regard them as distinguishable from this one. For example, in Utilities Ins. Co. v. Wilson, 207 Okl. 574, 251 P.2d 175 (1952), the insured owned an uninsured truck which had "been left for some time on his farm without being driven." The Court's decision turned upon a determination of whether the truck was "newly acquired" within the scope of the requirement that notice be given "within thirty days," and whether an automobile owned by the insured qualified as a "substitute automobile" within the policy terms. There was no evidence there that the truck was inoperable nor was there any explanation of why the owner-insured failed to schedule it under the coverage of his policy.

In Auto Lease Co. v. Central Mutual Ins. Co., 7 Utah 2d 336, 325 P.2d 264 (1958), the insured owned approximately twenty automobiles, all under lease to various businesses. The policy sued upon listed and described five cars which were leased to one company. The Court held the "automatic coverage" provisions inapplicable because the other fifteen cars were not insured with the company. Significantly, the insured there was in the business of leasing automobiles for hire as distinguished from a situation such as here where the owner leases vehicles only occasionally when he does not need them in his business. Also, there was no finding that the insured did not maintain public automobile liability insurance with another company. Moreover, it does not appear whether any of the lessees maintained insurance under the terms of their lease.

In Williams v. Standard Accident Ins. Co., 158 Cal.App.2d 506, 322 P.2d 1026 (1958), the Court rejected the insured's argument that a partially dismantled Chevrolet was not an "automobile" within the policy terms upon the date of delivery, the insured having been given thirty-days under the policy to notify the insurance company of any "newly acquired automobile." The Court sustained the lower Court's finding that, notwithstanding the insured's testimony to the contrary, the Chevrolet met the common, general, and popular definition of an "automobile." The Court found as a fact that the insured purchased the car as an "automobile"; that he immediately began to repair it and put it in operating condition, secured a certificate of title thereto, and failed to notify the insurer of the acquisition within the thirty days prescribed in the policy. Therefore, coverage was not extended to include the Chevrolet.

We do not believe the facts in Williams are at all similar to this case. There the Chevrolet was purchased as an automobile to be used by the insured; it was not abandoned but was repaired and put into operating condition. Therefore, it would reasonably come within the policy requirement that the company insure "all automobiles owned by the named insured."

In Brown v. State Farm Mutual Auto. Ins. Co., 306 S.W.2d 836 (Ky.App.1957), the insured attempted, under the substitution provision in the policy, to substitute a Ford car which he owned at the time the policy was issued for a Studebaker, covered by the policy. The Court held that the Ford was not a "newly acquired automobile" of which notice had been given the company within thirty days following the acquisition. It reasoned that the parties contemplated a replacement which would be a car acquired by the insured in the future and not one owned at the time the policy was issued. The facts in Brown are not analogous to those here.

In Collard v. Globe Indemnity Co., supra, the insured acquired an old truck which he immediately took to his shop for rebuilding. Notice of the acquisition

was not given the insurer within thirty days of the "delivery" date but was given within thirty days from the time at which the truck was rendered suitable for "replacement purposes." The Court refused to enlarge upon the policy provisions, and held that the phrase "notifies the company within thirty days following the date of its delivery to him," contemplated the time at which actual delivery of the newly acquired automobile was accomplished, notwithstanding the condition of the vehicle. The Court did not consider the problem of coverage where the question is whether all automobiles owned by the insured are insured with the company.

In Aetna Casualty & Surety Co. v. Chapman, 240 Ala. 599, 200 So. 425 (1941), the question was whether a truck acquired under a loan or hiring was extended automatic coverage under a provision applicable to vehicles of which the insured acquired "ownership." The Court held that the phrase "acquires ownership" means "such ownership as the ordinary man ascribes to his own, the property right which he holds as owner; the right of user, and interest in its protection which goes with a sense of ownership." Therefore, coverage was not extended to include the truck.

In Mitcham v. Travelers Indemnity Co., 127 F.2d 27 (4th Cir., 1942), the insured acquired a new Lincoln Zephyr from a motor company and authorized the company to sell his older Buick car. The policy covered the Buick and included provisions for automatically insuring "replacement" automobiles, subject, however, to notice being given the company within ten days from date of acquisition. The Court sustained the lower Court's judgment for the insurer and found that the insured retained title and full control over the Buick; that the company intended to insure only one car; and that notice was not given the insurer within the ten-day period as required in the policy. The Court concluded that the Lincoln was not a "replacement" for the Buick and therefore did not come within the coverage of the policy.

Clearly, the authorities relied on by plaintiff do not weaken defendants' position or conflict with our conclusions here.

■ Defendants point out that, under an endorsement and "filing" with the Louisiana Public Service Commission, effective June 3, 1959, for which Brooks paid an additional premium, plaintiff was exposed to liability for any final judgment against the insured for bodily injury or property damage resulting from the negligent operation, maintenance, or use of any motor vehicle operating under the insured's certificate of public convenience and necessity "* * * *regardless of whether such motor vehicles are specifically described in the policy or not.*" (Emphasis added.) Thus, they argue, the leased 1956 Nabors lumber trailer, although not scheduled under the policy, constituted an additional exposure for Canal. This argument overlooks, however, other express language of the endorsement which provides:

"The Insured agrees to reimburse the Company for any payment made by the Company on account of any accident, claim, or suit involving a breach of the terms of the policy, *and for any payment that the Company would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement.*" (Emphasis added.)

It is clear, therefore, that in the event Canal became liable under the provisions of the Louisiana Public Service Commission endorsement, Brooks, its insured would be liable to Canal for any payment that the insurer would not have been liable for under the scheduled coverage of the policy. The endorsement alters Canal's responsibility to the public, but not to Brooks, and thereby creates an independent liability for which Brooks is ultimately responsible, pursuant to the express provisions of the endorsement which creates the liability in the first instance.

Having concluded that plaintiff's policy extended automatic coverage to include

Brooks' newly acquired 1957 Ford automobile, it becomes unnecessary to consider defendants' plea of estoppel.

For the reasons given, there will be judgment for defendants as prayed.

Present decree accordingly.