Larry LUKE, Individually, et al.,
Appellants,

v.

AMERICAN FAMILY MUTUAL INSUR-
ANCE COMPANY, Appellee.

AMERICAN FAMILY MUTUAL INSUR-
ANCE COMPANY, Appellant,

v.

Larry LUKE, Individually, et al.,
Appellees.

Nos. 71–1348, 71–1374.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1972.

Decided Nov. 2, 1972.

Submitted March 12, 1973.

On Rehearing En Banc
April 16, 1973.

Rehearings Denied May 21, 1973.

Gerald L. Reade and John R. Kabeiseman, Yankton, S. D., for Luke.

J. B. Shultz, Sioux Falls, S. D., for American Family Mut. Ins. Co.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

The plaintiffs, Larry Luke, individually and as the administrator of the estate

of Lisa Luke, and Kathleen Luke, are the assignees of the insured, Herbert Carl Llewellyn, and the holders of judgments totaling $138,840.12 plus interest, costs and attorney fees against Llewellyn.

The plaintiffs alleged that American Family wrongfully denied coverage under its policy with Llewellyn. Plaintiffs further charged that the company in bad faith failed to settle within the policy limits of its insured's policy. Both parties moved for summary judgment. The trial court found that coverage existed but refused to allow damages in excess of the policy limits. 325 F.Supp. 1330 (D.S.D.1971). Cross appeals followed. The insurance carrier contests the finding of coverage, and the plaintiffs appeal from the denial of the damages over the policy limits. We affirm the trial court's finding that coverage should have been afforded the insured, however, we find that the insurer was liable for the full amount of the judgment in excess of its policy limits. We deny plaintiffs their requested attorney fees.

The insured owned a 1966 Pontiac which was covered by American Family's liability policy No. 40–054467. On October 15, 1966, while the 1966 Pontiac was in possession of the insured's estranged wife, Llewellyn purchased for $460 under a conditional sales agreement a 1959 Oldsmobile for his use from Wilson Motor Company of Sioux City, Iowa. An Iowa certificate of title was issued in Llewellyn's name with the car dealer holding it for security. Llewellyn made no effort to insure this car.

On January 15, the Oldsmobile became disabled with engine trouble, and Llewellyn had Wilson Motor tow the car to their garage. Llewellyn still owed $350 on the purchase price. On January 31, 1967, Wilson Motor Co. legally repossessed the Oldsmobile and transferred the title back to its name, however, Llewellyn could have reacquired the title by payment of the contract balance before February 9, 1967. Wilson Motor Co. later sold the car for salvage. On January 16, the day after Llewellyn had Wilson Motor tow in his Oldsmobile, he purchased a 1967 Pontiac from another car dealer in Sioux City. On February 4, 1967, Llewellyn, while intoxicated and driving on the wrong side of the road, was involved in the accident with the Luke family. He was subsequently convicted for manslaughter and sent to prison.

The basic issue as to coverage concerns the "newly acquired automobile" clause under Llewellyn's insurance contract with American Family. The clause reads:

> "Owned automobile means . . . b. a private passenger or utility automobile ownership of which is acquired by the named insured during the policy period, *provided* the named insured within 30 days after its acquisition notifies the company thereof and of his election to make the insurance afforded by this and no other policy . . . issued by the company applicable to such automobile *and* . . . (2) the company insures under the Liability Coverage, *all* private passenger and utility automobiles *owned by the named insured on the day of its acquisition* . . . ." (Emphasis ours.)

American Family denied coverage arguing that Llewellyn was still the legal title holder to the uninsured Oldsmobile on the date of acquisition of the 1967 Pontiac, therefore, it did not insure *all automobiles* owned by the insured on that date. As a result automatic coverage of the 1967 Pontiac was not afforded.

The district court held that the 1967 Pontiac was covered under the policy since the 1959 Oldsmobile was not an "owned" automobile within the meaning of the "newly acquired automobile" provision at the time the 1967 Pontiac was purchased. We affirm this ruling.

American Family contends that the construction of the newly acquired automobile clause is controlled strictly by the

Iowa Certificate of Title statute;[1] however, the trial court, citing Canal Insurance Company v. Brooks, 201 F.Supp. 124, 128 (W.D.La.1962), aff'd, 309 F.2d 751 (5 Cir. 1962), held that "the phrase 'all private passenger and utility automobiles owned by the named insured' contained in this policy 'does not contemplate a vehicle which is in such a position or condition that a reasonable person would not include it in a policy of public liability insurance.'" 325 F. Supp. at 1332.

Other courts construing the same provision have almost uniformly defined an owned automobile within the policy coverage as an operable automobile, one capable of being used on the streets and highways. See e. g., Glens Falls Insurance Company v. Gray, 386 F.2d 520 (5 Cir. 1967); Patrick v. State Farm Mutual Automobile Insurance Company, 90 N.J.Super. 442, 217 A.2d 909, 912–913 (1966); cf. Lynam v. Employers' Liability Assurance Corp., 218 F.Supp. 383, 385 (D.Del.1963), aff'd 331 F.2d 757 (3 Cir. 1964). The ownership of an automobile which is junk or needs major repairs can hardly be thought to be ownership for liability insurance purposes "since the principal purpose of such insurance is to provide coverage for an automobile which is to be driven and which may become involved in an accident or other mishap." Glens Falls Insurance Company v. Gray, supra 386 F. 2d at 524–525. Cases which have differed from this view have usually done so where the car is temporarily inoperable and is being repaired for future service. Williams v. Standard Accident Insurance Company, 158 Cal.App.2d 506, 322 P.2d 1026 (Cal.App.1958); cf. Allstate Insurance Company v. Stevens, 445 F.2d 845 (9 Cir. 1971).

The 1959 Oldsmobile in the present case was disabled with engine trouble; in fact, Wilson Motor was able to sell it for only $75 to a salvage dealer (the car was "junked out"). After January 15 the Oldsmobile was at all times in the possession of Wilson Motor, and Llewellyn showed no intention of reclaiming it. Moreover, on the day following the vehicle's failure Llewellyn unsuccessfully attempted to purchase a replacement automobile from Wilson Motor, and later that day he bought the 1967 Pontiac from another dealer. Thus, we agree with the trial court that a reasonable construction of American Family's policy would not include the inoperable and abandoned Oldsmobile as an owned automobile.[2]

## LIABILITY FOR EXCESS DAMAGES

The district court found that American Family exercised good faith in refusing to provide coverage and therefore was not liable for damages over the limits afforded. In Kunkel v. United Security Insurance Company of New Jersey, 84 S.D. 116, 168 N.W.2d 723, 726 (1969), the Supreme Court of South Dakota, in passing on the question of liability of an insurance carrier for excess damages in refusing to settle within policy limits, stated:

"The trial court submitted the matter to the jury under the bad faith rule which we believe to be the better rule and the one prevailing in the majority of jurisdictions and we approve it. . . . However, . . . the

---

1. Iowa Code Ann. § 321.45 reads in part:
   "2. No person shall acquire any right, title, claim or interest in or to any vehicle subject to registration under this chapter from the owner thereof except by virtue of a certificate of title issued or assigned to him for such vehicle or by virtue of a manufacturer's or importer's certificate delivered to him for such vehicle . . . ."

2. It should be noted that "[i]n general the 'newly acquired automobile' clause is intended for the benefit of the insured and should be liberally construed in his favor." Glacier General Assurance Company v. State Farm Mutual Automobile Insurance Company, 150 Mont. 452, 436 P.2d 533, 535 (1968). See also, Canal Insurance Company v. Brooks, 201 F.Supp. 124, 128 (W.D.La.1962), aff'd 309 F.2d 751 (5 Cir. 1962); 12 Couch on Insurance 2d § 45:185, at 235–236 (1964).

character and extent of the insurer's negligence are factors to be considered by the trier of fact in determining if there is bad faith. The insured has the burden of establishing his claim by a preponderance of the evidence." [3]

The federal district court acknowledged two lines of authorities, one holding that good faith *in refusing to defend* is not a valid defense in an excess action where there has been a reasonable offer to settle,[4] and the other line of cases holding a good faith decision in refusing to defend does constitute a defense to an excess action even when accompanied by a refusal to settle within policy limits.[5] The trial court observed

that the issue was one of first impression in South Dakota and concluded that the South Dakota Supreme Court would apply the *Kunkel* good faith test to the present situation. The district court then found that the carrier was in good faith in initially refusing coverage and therefore denied liability for damages in excess of the contract coverage afforded.

■ Although this court gives special weight to the determination of local law by a federal district judge, a court of appeals cannot be irrevocably bound by a district judge's choice of one of two or more alternative rules to follow in a diversity case.[6] To hold otherwise would

3. In adopting this position the South Dakota Supreme Court rejected those decisions which premise liability on evidence of negligence. See generally, 14 Couch on Insurance 2d § 51.5 at 510–511 (1965).

4. See e. g., Herman v. Western Casualty & Surety Co., 271 F.Supp. 502 (E.D.Mo. 1967), aff'd, 405 F.2d 121 (8 Cir. 1968); Comunale v. Traders & General Insurance Co., 50 Cal.2d 654, 328 P.2d 198 (Cal. 1958).

5. See e. g., State Farm Mutual Automobile Ins. Co. v. Skaggs, 251 F.2d 356 (10 Cir. 1957); Dairyland Ins. Co. v. Hawkins, 292 F.Supp. 947 (S.D. Iowa 1968).

6. This circuit has often stated that where the trial judge arrives at a permissible conclusion with respect to the law of his state, such conclusion will be *binding* on appeal. H. K. Porter Co. v. Wire Rope Corporation of America, Inc., 367 F.2d 653, 662–663 (8 Cir. 1966); Homolla v. Gluck, 248 F.2d 731, 733–734 (8 Cir. 1957). Only the Sixth Circuit has recited a similar position. See Lee Shops, Inc. v. Schatten-Cypress Co., 350 F.2d 12, 17 (6 Cir. 1965), cert. denied, 382 U.S. 980, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966); Rudd-Melikian, Inc. v. Merritt, 282 F.2d 924, 929 (6 Cir. 1960). The continued application of such a rule has been soundly criticized. See 1 Barron & Holtzoff, Federal Practice and Procedure § 8, at 42–43 (1960); 1A Moore's Federal Practice § .309[2], at 124–125 n. 15 (1971 Supp.); Wright, Law of Federal Courts § 58, at 241 (1970). The legal effect of this principle on questions of first impression is to preclude appellate consideration of an issue involving a significant ques-

tion of law. The impropriety of the rule is pointed up by Mr. Justice Frankfurter's observation in Bernhardt v. Polygraphic Company, 350 U.S. 198, 209, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (concurring opinion): "[T]he defendant is entitled to have the view of the Court of Appeals on Vermont law and cannot, under the Act of Congress, be foreclosed by the District Court's interpretation." See also, Huddleston v. Dwyer, 322 U.S. 232, 236, 64 S.Ct. 1015, 1018, 88 L.Ed. 1246 (1944) ("It is the duty of the federal appellate courts, as well as the trial court, to ascertain and apply the state law where . . . [that law] controls [the] decision.") See generally Kurland, Mr. Justice Frankfurter, The Supreme Court and the Erie Doctrine in Diversity Cases, 67 Yale L.J. 187, 216–218 (1957).

Other circuits have not "bound" themselves to the district judge's initial choice of state law. Rather, they tend to accord "great weight" to the district court's determination of local law unless they believe it to be clearly erroneous. See e. g., Freeman v. Heiman, 426 F.2d 1050, 1053 (10 Cir. 1970); Minnesota Mutual Life Insurance Co. v. Lawson, 377 F.2d 525, 526 (9 Cir. 1967); Lomartira v. American Automobile Insurance Co., 371 F.2d 550, 554 (2 Cir. 1967). We feel future adherence to the principle set forth by the Fifth Circuit more adequately reflects a court of appeals' proper course of review: "We give great weight to the view of the state law taken by the district judge experienced in the law of that state, although of course the parties are entitled to review by us of the trial court's determination of state law just as they are of any other legal question in a case." Free-

be to abdicate our appellate responsibility.

In the instant case American Family was presented with several demands by the plaintiffs and its assured to settle the three cases for $49,000 which was within the limits of the $25,000–50,000 policy. These demands were repeatedly ignored. At one time the plaintiffs offered to hold their suits in abeyance to provide the company an opportunity to file a declaratory judgment suit to determine whether coverage was provided. Although the liability of the company's assured was clear, and the potential damages for the wrongful death of the infant and for the serious injuries to the other plaintiffs were obviously greater than the policy limits, the company refused to consider both settlement and declaratory relief.

The rule announced by the South Dakota court in *Kunkel* is not apposite in determining the precise problem before us. *Kunkel* involved an insurer who assumed its obligation to defend its assured but exercised bad faith in refusing to settle within the policy limits. There exists an important difference between the liability of an insurer who performs his obligation to defend the insured but fails to exercise good faith in settling within the policy limits and an insurer who breaches his contract by failing to defend and who then rejects a reasonable offer to settle.

When it is alleged that the sole breach of duty by the carrier is its refusal to settle within the policy limits, good faith becomes the central issue to be decided. On the other hand, good faith is not relevant to an insurer's wrongful breach of its contract to provide coverage. A breach of contract is never justified simply because the offending party in good faith believed he was entitled to refuse performance. When a breach occurs the basic question then concerns the proper measure of damages which flow from the breach.[7] When an insurer refuses to defend and, additionally, refuses to accept a reasonable settlement within the policy limits, the company's liability for damages may be measured as well by its rejection of the offer to settle and may thus exceed the policy limits. As stated by the California Supreme Court in Comunale v. Traders & General Insurance Co., 50 Cal.2d 654, 328 P.2d 198, 202 (Cal. 1958):

"An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract. Certainly an insurer who not only rejected a reasonable offer of settlement but also wrongfully refused to defend should be in no better position than if it had assumed the defense and then declined to settle. The in-

man v. Continental Gin Co., 381 F.2d 459, 466 (5 Cir. 1967). See also Stool v. J. C. Penney Co., 404 F.2d 562, 563 (5 Cir. 1968).

7. It is generally held that where the only wrongful act of the insurer is the refusal to defend, the liability of the insurer is ordinarily confined to the limits of the policy. Fidelity & Casualty Co. of New York v. Gault, 196 F.2d 329, (5 Cir. 1952); Myers v. Farm Bureau Mutual Insurance Co. of Michigan, 14 Mich.App. 277, 165 N.W.2d 308 (1968); Mannheimer Brothers v. Kansas Casualty & Surety Co., 149 Minn. 482, 184 N.W. 189 (1921). This follows from the general contract principle that upon breach of a contract a party is only entitled to be restored to the same position he was in before the breach. Liability for excess damages does not follow from the failure to defend when there has been no offer to settle within the policy limits. When an assured hires his own counsel it is generally reasoned that damages would not be any less if the insurance company had provided the defense. Furthermore, if the assured is indigent and cannot afford a defense, it can only be assumed a court will allow damages, even upon default, which are prima facie commensurate and reasonable to compensate the injury suffered.

surer should not be permitted to profit by its own wrong."

See also Landie v. Century Indemnity Co., 390 S.W.2d 558, 564–565 (Mo.App. 1965). Although there exists some authority to the contrary,[8] the vast number of jurisdictions which have considered the question hold that when an offer of settlement within the policy limits has been made and ignored, a good faith refusal to defend is not a valid defense to a claim in excess of the policy limits. Western Casualty & Surety Company v. Herman, 405 F.2d 121 (8 Cir. 1968); Trahan v. Central Mutual Insurance Company, 219 So.2d 187 (La.App.1969); Jenkins v. General Accident Fire & Life Assurance Corp., 349 Mass. 699, 212 N. E.2d 464, 467 (1965); American Fidelity Fire Insurance Company v. Johnson, 177 So.2d 679 (Fla.App.1965), cert. denied, 183 So.2d 835 (1966); Landie v. Century Indemnity Company, 390 S.W. 2d 558 (Mo.App.1965); Comunale v. Traders & General Insurance Company, 50 Cal.2d 654, 328 P.2d 198 (1958). Cf. Cheek v. Agricultural Insurance Company of Watertown, New York, 432 F.2d 1267 (5 Cir. 1970); Foundation Reserve Insurance Company v. Kelly, 388 F.2d 528, 530–532 (10 Cir. 1968); Seward v. State Farm Mutual Automobile Insurance Company, 392 F.2d 723 (5 Cir. 1968); Prince v. Universal Underwriters Insurance Company, 143 N.W.2d 708 (N.D.1966); American Home Assurance Company v. Sand, 253 F.Supp. 942, 949 (D.Ariz.1965).

There exists another compelling reason for rejecting the company's defense of good faith in denying coverage. By statute South Dakota has adopted a measure of damages for breach of contract which would allow recovery "for all the detriment proximately caused" by the breach. A more simple or explicit expression of the allowable damages can hardly be imagined. S.D.C.L.Ann. § 21–2–1 (1967) states:

"General measure of damages for breach of contract—Uncertain damages not recovered.—For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved *for all the detriment proximately caused thereby,* or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin." (Emphasis ours.)

In Comunale v. Traders & General Insurance Company, supra, 328 P.2d at 202, the California Supreme Court interpreted Section 3300 of the California Civil Code, which is identical to the South Dakota statute[9] (except for the last sentence), to authorize a recovery in excess of the insurer's policy limits upon a breach of the insurance contract. The court declared:

"A breach which prevents the making of an advantageous settlement when there is a great risk of liability in excess of the policy limits will, in the ordinary course of things, result in a judgment against the insured in excess of those limits. Section 3300 of the Civil Code provides that the measure of damages for a breach of

---

8. See note 5, supra. The cases holding that good faith in refusing coverage is a proper defense to excess liability fail to offer any reason for the adoption of the rule. The apparent rationale seems to be that since bad faith must be shown on the refusal to settle it necessarily follows that the same rule is applicable when there has been a refusal to defend.

Most legal commentators have rejected the good faith defense to excess liability when applied to the carrier's decision not to defend. Cf. Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136 (1954). See also 47 Geo.L.J. 601 (1959); 57 Mich.L.Rev. 775 (1959); 107 U.Pa.L.Rev. 571 (1959); 10 Hastings L.J. 198 (1958).

9. The annotation to South Dakota Statute 21–2–1, under "source" cites earlier South Dakota statutes and Section 3300 of the California Civil Code.

contract is the amount which will compensate the party aggrieved for all the detriment proximately caused by the breach, or which, in the ordinary course of things, would be likely to result from it. . . .

"It is clear that section 3300 of the Civil Code authorizes a recovery in excess of the policy limits, . . ."

*Comunale* is convincing authority for the proposition that this statutory measure of damages authorizes recovery for the entire judgment even though it exceeds the policy limits.[10]

*Comunale* concerned an insurer who had wrongfully refused to defend and settle within the policy limits. The assured in *Comunale*, however, was able to employ competent counsel to represent him. In the present case not only did American Family refuse to defend or negotiate a settlement for Llewellyn, but it wrongfully abandoned its assured when he was unable to afford legal counsel and, because of his imprisonment, was unable to conduct his own defense. Cf. Siegel v. William E. Bookhultz & Sons, Inc., 136 U.S.App.D.C. 138, 419 F.2d 720, 725 (1969).

We find the entire judgment was the natural consequence and proximate result of the defendant's breach of its obligation to defend its assured.

## ATTORNEY FEES

■ Plaintiffs have also appealed under South Dakota law the denial of attorney fees against the insurer. S.D.C.L. Ann. § 58–12–3 (1967) reads:

"In all actions hereafter commenced against any insurance company, including any reciprocal or interinsurance exchange, on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company or exchange has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the court, if judgment is rendered for plaintiff, shall allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs, provided, however, that when a tender is made by such insurance company or exchange before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender, no such costs shall be allowed." [11]

Plaintiffs bring this action under an assignment from the assured and as such possess his rights and claims. The issue of whether there has been a vexatious refusal or a refusal made without reasonable cause is one of fact depending upon the existing circumstances. Wilson v. Allstate Insurance Co., 186 N.W.2d 879, 883 (S.D.1971); Tracy v. T & B Construction Co., 182 N.W.2d 320, 323 (S.D.1970). The trial court held that plaintiffs were not entitled to attorney fees since there was reasonable cause for American Family's refusal of coverage. Plaintiffs have failed to allege any dispute of fact which ordinarily might be left for the jury to resolve.[12] As the trial judge pointed out in discussing the refusal to provide coverage:

"(1) [D]efendant conducted a thorough investigation into the facts relative to the existence of policy coverage; (2) Llewellyn was promptly notified of the decision to deny coverage; (3) the clause upon which coverage turns has not been interpreted by the state supreme court; and (4) the interpretation relied upon by the in-

---

10. The states of Montana and North Dakota have similar statutes and their supreme courts follow the same rationale as *Comunale*. Lewis v. Mid-Century Insurance Co., 152 Mont. 328, 449 P.2d 679, 682–683 (1968); Prince v. Universal Underwriters Insurance Co., 143 N.W.2d 708, 715–717 (N.D. 1966).

11. This statute was amended in 1972 to provide attorney fees on appeal as well.

12. It is likewise doubtful whether the issue of vexatious or unreasonable refusal to provide coverage is one for a jury to resolve. By statute the attorney fees are to be determined and awarded by the court.

surer in reaching its decision to deny coverage under the policy was not unreasonable." 325 F.Supp. at 1334.

We find in the trial court's discussion sufficient basis on which the denial of attorney fees can be affirmed. Even though good faith is not a valid defense for breach of the contract, good faith is essentially relevant to the issue as to whether the refusal was "vexatious or without reasonable cause."

Judgment affirmed in part and reversed in part. The claim is remanded to the trial court for entry of judgment in accordance with our opinion.

## ON REHEARING EN BANC

Before MATTHES, Chief Judge, VAN OOSTERHOUT, Senior Circuit Judge, and MEHAFFY, GIBSON, LAY, HEANEY, BRIGHT, ROSS and STEPHENSON, Circuit Judges, en banc.

On motion for rehearing it is urged that the South Dakota statute, S.D.Code Ann. § 21–2–1 (1967), governing damages for breach of contract is not applicable in measuring damages arising from the insurer's failure to settle within the policy limits. However, assuming arguendo that this is true, under the facts of this particular case, we would reach the same result in holding that the insurer is liable for the damages over and above its policy limits.

Assuming the statute is not applicable, the insurer's liability must be measured by the "bad faith" standard set forth in Kunkel v. United Security Insurance Company of New Jersey, 84 S. D. 116, 168 N.W.2d 723 (1969). Under the Kunkel test the insurer who breaches his contract by refusing to defend would be placed in the same shoes as the insurer who assumes coverages but refuses to settle by accepting an offer to settle within the policy limits.

Applying the Kunkel rule of bad faith, it remains undisputed on the present record that the insurer failed to fulfill its responsibility to its insured. The record shows that once the insurer refused coverage it failed to investigate further or even consider the likelihood of excess damage to its insured in light of the facts and circumstances of the case. Under the facts existing here we hold the insurer was guilty of bad faith in refusing to settle as a matter of law.

The defendant urges, however, that a finder of fact should be able to consider the "good faith" of the insurer in denying coverage as one of the factors in considering its good faith in refusal to settle. We reject this argument for the reasons set forth by Judge Van Oosterhout in Western Casualty & Surety Company v. Herman, 405 F.2d 121 (8 Cir. 1968), adopting the language of Landie v. Century Indemnity Company, 390 S. W.2d 558 (Mo.App.1965), that notwithstanding an honest belief by the insurer that the policy is not in effect, the company must in good faith consider offers for settlement within the limits of the insurance policy. The effect of this holding is that an insurer who breaches its contract to provide coverage is placed in *no better* and in no worse position than if it had assumed coverage when considering whether it acted in good faith in refusing to settle.

We, therefore, reaffirm our prior holding.

Circuit Judges VAN OOSTERHOUT, LAY and HEANEY adopted our prior opinion; Chief Judge MATTHES and Circuit Judges MEHAFFY and ROSS concur only on the basis set forth in this opinion filed on rehearing.

BRIGHT, Circuit Judge, separately concurring and dissenting, in which GIBSON and STEPHENSON, Circuit Judges, join.

I join in the concurring and dissenting opinion of Judge Stephenson but add my additional views in this case. I feel this case is important, relating, as it does, to the imposition of liability upon an insurer to pay to claimants an amount in excess of policy limits.

The obligation of the insurer toward its insured needs to be evaluated realistically, not by way of hindsight. In this

case, application of the literal language of the policy might not impose any liability on the insurer. The language of the policy extended coverage to a newly acquired automobile if the company insures "all * * * automobiles owned by the insured on the date of its acquisition." While the insured purchased a "newly acquired" 1967 Pontiac automobile, he retained ownership of a disabled Oldsmobile which was never brought under the liability policy coverage as well as a 1966 Pontiac which was specifically described in the policy. However, the district court determined that American Family's liability policy extended to the third (Pontiac) automobile because the second (Oldsmobile) automobile, when delivered to the seller's garage, proved to be unrepairable and thus no longer needed to be considered as a car owned by the insured. Thus the "newly acquired automobile" clause applied to the 1967 Pontiac acquired by the named insured only because the trial court created an exception to the literal language of the policy. Although this construction may be a permissible one, nothing in this record indicates that the insurance carrier should have reasonably anticipated that ruling.[1]

Given the paucity of authority on the subject, we believe the insurer was entitled to view its policy defense as meritorious and justified, subject only to the usual vagaries and uncertainties of litigation.

The panel hearing this appeal initially, on the basis of the *Comunale* [2] case, ruled that the insurer's good faith could not limit its liability for all damages flowing from a breach of contract. Thus, under this contract theory, the insurer who mistakenly relies on a policy coverage defense and fails to consider a settlement within the policy limits becomes strictly liable to the insured for a judgment in excess of the policy limits.

As I understand the opinion on rehearing, three judges not on the original panel and the three concurring and dissenting judges reject the application of the *Comunale* rule to this case. Although the strict liability rule in *Comunale* has been frequently cited, this rule has been infrequently applied.[3]

Moreover, the *Comunale* decision was based upon a particular interpretation of California contract law, which is distinguishable from the construction given by the South Dakota Supreme Court to sections of the South Dakota Code which deal with the measure of damages flowing from breach of contract.[4]

---

1. For instance, the case of Canal Insurance Co. v. Brooks, 201 F.Supp. 124, 127 (W.D. La.1962), aff'd, 309 F.2d 751 (5th Cir. 1962), relied upon by the district court for its decision on coverage, is not directly in point. In the *Canal Insurance Co.* case, the omission of the insured, pointed to by the insurer, was the failure to list a certain boat trailer and other unserviceable semitrailers as vehicles which the insured owned. The policy called for a listing of all owned automobiles. No South Dakota court had considered a similar problem of coverage.

2. Comunale v. Traders & General Ins. Co., 50 Cal.2d 654, 328 P.2d 198 (Cal.1958).

3. The panel decision has cited Western Casualty & Surety Co. v. Herman, 405 F. 2d 121 (8th Cir. 1968), and Landie v. Century Indemnity Co., 390 S.W.2d 558 (Mo.App.1965), as cases supporting the application of the *Comunale* rule. In *Herman,* our affirmance rested upon a specific *finding of fact* by the district court, Herman v. Western Casualty & Surety Co., 271 F.Supp. 502 (E.D.Mo. 1967), that the insurer was guilty of bad faith in refusing to settle, notwithstanding that it had sought to litigate a good faith policy defense. In *Landie,* the case authority which underlay our *Herman* decision, the Missouri court, in affirming an excess judgment over the policy limits, made this pertinent observation,

> From this fact situation the jury could well have found, as they did, that the [insurance] company acted in bad faith in refusing to settle. [*Landie, supra,* 390 S.W.2d at 566.]

4. The pertinent sections read:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result

Recently, the South Dakota Supreme Court, in Big Band, Inc. v. Williams, 202 N.W.2d 121 (S.D.1972), said of these sections:

> When the action is for breach of contract, plaintiff is entitled to recover all his detriment proximately caused by the breach, *not exceeding the amount he would have gained by full performance.* (Emphasis supplied) [Id. at 123.]

The limiting phrase emphasized in the above quotation casts grave doubt upon the applicability in South Dakota of the sweeping pronouncement of *Comunale.*

The strict liability doctrine of *Comunale* represents a minority view which I do not believe would be followed in South Dakota and which the trial court properly rejected.

Courts seem to have applied three different rules in circumstances analogous to those in the instant case, as follows:

1) A rule that a good faith but mistaken declination of coverage insulates the insurance carrier from an excess judgment for refusal to accept an offer of settlement within the policy coverage. This is the rule which Judge Nichol applied in the trial of this case and which was also applied by the Fifth Circuit in Beck v. Pennsylvania National Mutual Cas. Ins. Co., 429 F.2d 813 (1970) (Pennsylvania law), the Tenth Circuit in State Farm Mutual Ins. Co. v. Skaggs, 251 F. 2d 356 (1957) (Oklahoma law), and National Service Fire Ins. Co. v. Williams, 454 S.W.2d 362 (Tenn.App.1969).

2) The *Comunale* rule, *Comunale, supra,* 50 Cal.2d 654, 328 P.2d 198, of per se liability based on the California statutory law, which rule is not applied in this case by a majority of the court.

3) A middle view which holds an insurer liable for more than the policy limits when the insurer, after declining coverage in good faith, is shown to have failed to exercise good faith in refusing to settle or consider settlement of the claim within the limits of the policy. I construe the following cases to reflect this view: Western Casualty & Surety Co. v. Herman, 405 F.2d 121 (8th Cir. 1968); Foundation Reserve Ins. Co. v. Kelley, 388 F.2d 528 (10th Cir. 1968) (undisputed facts demonstrate bad faith refusal to settle as a matter of law); Gordon v. Nationwide Mutual Ins. Co., 30 N.Y.2d 427, 334 N.Y.S.2d 601, 285 N. E.2d 849 (1972); Landie v. Century Indemnity Co., 390 S.W.2d 558 (Mo.App. 1965).

The initial panel opinion adopted the second rule. Although the majority of judges sitting *en banc* adopt the third rule, three judges of this *en banc* court join in the reversal of the district court for an alternate reason. These judges hold that, in considering whether a refusal to settle is in good or bad faith, the trier of fact should not give weight to a policy defense held in good faith by the insurer. I believe this view to be erroneous.

The rule applied does not reflect South Dakota law. I note with interest that the majority of this court has adopted this rule as the law of South Dakota without giving the trial judge an opportunity to state his views of South Dakota law.[5] The alternate theory rests solely

therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin. [S.D.C.L. § 21–2–1 (1967).]

Notwithstanding the provisions of these statutes, no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides [with exceptions not here applicable]. [S.D.C.L. § 21–1–5 (1967).]

5. In fact, the majority has completely disregarded the obligation to give "special weight" to the determination of local law by a district judge. Panel slip opinion at 7. Although the district court, on determining good faith, initially gave conclusive weight to the insurer's assertion that it did not believe the insured to be covered under the policy, the majority has declined to allow the trial judge to determine whether, under South Dakota law, a refusal to grant policy coverage made in good faith is even a factor in assessing whether a rejection of a settlement offer was made in good faith.

on the language of two cases arising under Missouri law; *Western Casualty, supra,* and *Landie, supra.* The opinion on rehearing cites no South Dakota case. Yet in Kunkel v. United Security Ins. Co. of New Jersey, 84 S.D. 116, 168 N.W.2d 723 (S.D.1969), in applying a "bad faith" standard in establishing an insurer's liability to pay more than policy limits for refusing to settle, but where no coverage issue existed, the South Dakota Supreme Court indicated that "any * * * factors tending to establish or negate bad faith on the part of the insurer" should be considered. The *Kunkel* court said:

> Good faith is a broad and comprehensive term. Whether an insurer had adhered to it usually depends upon circumstances and elements involved in a particular case. The decision not to settle must be thoroughly honest, intelligent, and impersonal. It must be a realistic decision tested by the expertise which an insurer necessarily assumes under the terms of its policy. * * *
>
> * * * While no single satisfactory test has been formulated as to what constitutes good or bad faith courts uniformly hold that the insured's interests must be considered. It appears to have been most frequently held the insured's interests must be given "equal consideration" with those of the insurer * * *. [168 N.W.2d at 726.]

In light of this language of the Supreme Court of South Dakota, the majority has ignored the local law in this diversity case contrary to the mandate of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

In summary, the majority of judges on this *en banc* court have disapproved of the application of the per se rule of the *Comunale* case, discussed above. I join in this disapproval.

The majority of the court, however, have ruled that the insurer's good faith

policy defense should not be considered as a factor in determining whether the insurer's refusal to settle a case was in bad faith. I join Judges Gibson and Stephenson in rejecting this theory. Bad faith, or its converse good faith, is discernable only by taking into account *all* the circumstances of a particular case. The strength of a policy defense plays an important role in the evaluation of a settlement offer. Logically, this factor should be assessed in determining the existence of good faith of the insurer in refusing a settlement offer. In this case, that offer was for almost the full amount of the policy limits. I do not believe the views of the majority can be justified on the basis of sound judicial policy applicable to cases of this kind nor as consistent with South Dakota law as reflected in *Kunkel, supra.*

Accordingly, I would remand this case to the district court for its further consideration.

STEPHENSON, Circuit Judge, with whom GIBSON and BRIGHT, Circuit Judges, join, concurring and dissenting.

We concur with the majority in affirming the trial court's finding of coverage. We dissent on the excess liability issue.

We specifically reject the contention that South Dakota would apply the rule of *Comunale* [1] which it is claimed holds that an insurer who denies coverage does so at its own risk, and, that a good-faith-but-mistaken declination of coverage followed by a refusal to consider a settlement offer within the policy limits makes the insurer strictly liable for the amount of any judgment rendered against the insured including the excess over the policy limits.

It is our view that the ultimate test to be applied under South Dakota law in determining whether an insurer is liable for damages in excess of the policy limits is, "was the insurer guilty of bad faith in refusing to settle within the policy

---

1. Commuale v. Traders & General Ins. Co., 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883 (Cal.1958).

limits?" Kunkel v. United Security Ins. Co. of New Jersey, 84 S.D. 116, 168 N.W. 2d 723 (S.D.1969). This is a fact question to be determined from all the circumstances and elements involved in a particular case. *Kunkel, supra,* at pp. 726, 730; *see also,* Dairyland Insurance Company v. Hawkins, 292 F.Supp. 947 (S.D.Iowa 1968); Landie v. Century Indemnity Company, 390 S.W.2d 558 (Mo. App.1965). In determining the issue of bad faith in refusing to settle within the policy limits the trier of fact is entitled to consider, among other factors, the good faith of the insurer in refusing to defend because of the circumstances indicating lack of coverage. "Obviously, in considering its own interest the insurer may, in good faith, determine whether, under the circumstances, it would be held liable at all, i. e., whether there is coverage" Beck v. Pennsylvania National Mutual Cas. Ins. Co., 429 F.2d 813, 819 (CA5 1970). The refusal to defend and refusal to settle within the policy limits are often interrelated. *See,* Gordon v. Nationwide Mutual Ins. Co., 30 N.Y.2d 427, 334 N.Y.S.2d 601, 285 N.E.2d 849 (1972); National Service Fire Ins. Co. v. Williams, 454 S.W.2d 362 (Tenn.App. 1970). In the latter case the Tennessee Court of Appeals in reversing the trial court held that the insurer did not act in bad faith in refusing to defend and settle within the policy limits where the insured named in the policy unequivocally stated that the defendant driver did not have permission to drive the insured's automobile at the time of the accident. The trial court found from other evidence that the driver in question did have permission to drive and that the insurance company acted in bad faith in refusing to defend and in refusing to consider or make settlement. In reversing the appeals court observed:

"We think an insurer, under circumstances such as depicted in this case, is justified in accepting as true the information given it by its named in-

sured which has a bearing on the liability of the insurer under its policy, and that the insurer can act reasonably on the basis of the information without being guilty of bad faith." The above case demonstrates the fundamental unfairness of a "refusal to defend at your own risk" doctrine.

In the matter at hand the trial court held as a matter of law that the defendant was not guilty of bad faith in its denial of coverage and refusal to defend, and therefore, denied the claim for damages in excess of the policy limits. 325 F.Supp. at 1334. It is our view that the controlling issue is whether the insurer's refusal to settle was in bad faith and that the good faith refusal to defend must be considered along with all other circumstances in making a finding with respect thereto. We would remand for a determination of that issue by the trier of fact.