Edith Clara PALMER, Administratrix of
the Estate of Leonard D. Palmer,
Plaintiff-Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant-Appellee.

Supreme Court of Tennessee.

April 27, 1981.

William I. McLain and Philip J. Cooper,
Memphis, for plaintiff-appellant.

Jerry E. Mitchell, Memphis, for defend-
ant-appellee.

OPINION

BROCK, Justice.

The husband of the plaintiff-administra-
trix was killed in an automobile accident on
August 25, 1972. The driver of the other
automobile, John Warner, was also killed in
the accident. Plaintiff-administratrix
obtained a judgment in the sum of $50,-
000.00 against Mr. Warner's estate for the
wrongful death of her husband and in this
action seeks to recover that judgment from
the defendant insurance company which at
the time of the accident insured a 1967
Nova Chevrolet automobile by a policy is-
sued to Mrs. Warner, the wife of the dece-
dent John Warner, the tortfeasor. At the
time of the accident Mr. Warner was not
driving the 1967 Nova described in the poli-

cy but, instead, was driving a 1963 Cadillac which he had acquired three days prior to the accident. The policy of automobile liability insurance issued by the defendant to Mrs. Warner afforded coverage not only to the described vehicle, the Nova, but also to "a newly acquired automobile" which was defined in the policy as follows:

"Newly acquired automobile—Means an automobile, ownership of which is acquired by the named insured or his spouse, if a resident of the same household, if

"(1) It replaces an automobile owned by either and covered by this policy, or *the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and*

"(2) *provided that no insurance shall be applicable to such newly acquired automobile unless as a condition precedent the named insured within thirty (30) days following such delivery date applies to the company for insurance on such newly acquired automobile.*" (Emphasis added.)

The defendant insurance company has denied coverage of the Cadillac driven by the insured's husband in this accident, asserting that it did not replace an automobile covered by the policy and that the Company did not insure all automobiles owned by the named insured and her spouse on the date of the delivery of the Cadillac.

The insured and the plaintiff do not insist that the Cadillac replaced an automobile covered by the policy but do contend that the Company insured all automobiles owned by the named insured and her husband on the date of delivery of the Cadillac.

The Company's assertion that it did not insure all automobiles owned by the named insured and her spouse on the date of delivery of the Cadillac is based upon the fact that the insured's husband, Mr. Warner, who was employed at an auto paint and body shop, had purchased a wrecked 1967 model Sunbeam Alpine automobile on July 18, 1972, and owned it at the time the Cadillac was delivered three days prior to this accident.

The Company asserts that this wrecked Sunbeam was an automobile within the meaning of the policy but the insured and the plaintiff assert that it was not such an automobile because it was severely damaged and was by no means operable.

This wrecked Sunbeam had been wrecked by its previous owner, was in an inoperable condition, had a bent frame and other extensive damage, and was at no time driveable after its purchase by Mr. Warner. It was described as in "permanently inoperable" condition but the record indicates that Mr. Warner, who had special skills in repairing automobiles, intended to attempt to restore the Sunbeam at some future time to an operable condition. Thus, the question posed for our decision is whether the Sunbeam was an "automobile" within the meaning of this policy; if it was such an automobile, then the Company did not insure all automobiles owned by the insured and her spouse at the time of delivery of the Cadillac and no coverage would be afforded to the Cadillac in this accident, but, if it was not such an automobile, then the Company did insure all automobiles owned by the insured and her spouse on the date of the delivery of the Cadillac and thus the Cadillac would be a "newly acquired automobile" and would be afforded coverage.

The policy defines "automobile" as follows:

"Automobile—Means a four wheel and motor vehicle designed for use principally upon public roads, . . ."

■ In construing contracts of insurance, we attempt to ascertain the intent of the contracting parties and, since the policy was drafted by the insurance company, we must resolve all ambiguity and doubt in favor of the insured. We need not abandon common sense; indeed, we are required to exercise common sense in construing these policies.

■ Approaching the problem with this attitude, we conclude that "automobile" within the "newly acquired automobile" coverage clause of this policy does not connote a totally wrecked, totally inoperable vehicle such as the wrecked Sunbeam here

in question. Such a wrecked vehicle is nothing more than a former automobile and is no longer "designed for use principally upon the public roads."

A reasonably prudent person or average consumer of insurance would not purchase expensive liability insurance to cover losses to be incurred through the infliction of property damage or personal injuries upon members of the public from the use, maintenance or ownership of such a wrecked inoperable vehicle.

Similar conclusions have been reached by other courts. In *Luke v. American Family Mutual Insurance Company*, 325 F.Supp. 1330, 1332 (1971), *aff'd* 476 F.2d 1015 (8th Cir. 1973), the court held that the phrase, "all private passenger and utility automobiles owned by the named insured," contained in an automobile insurance policy, "does not contemplate a vehicle which is in such a position or condition that a reasonable person would not include it in a policy of public liability insurance . . . ." In its opinion affirming the judgment of the District Court, the Circuit Court of Appeals said:

> "Other courts construing the same provision have almost uniformly defined an owned automobile within the policy coverage as an operable automobile, one capable of being used on the streets and highways . . . . The ownership of an automobile which is junk or needs major repairs can hardly be thought to be ownership for liability insurance purposes 'since the principal purpose of such insurance is to provide coverage for an automobile which is to be driven and which may become involved in an accident or other mishap.' " 476 F.2d at 1018.

In *Canal Insurance Company v. Brooks*, 201 F.Supp. 124 (1962), *aff'd* 309 F.2d 751 (5th Cir. 1962), the court said:

> "Nothing short of a strained and highly technical construction of the policy would result in the conclusion that, despite the physical condition of these two trailers (which had been out of use for six months prior to the accident in question, were inoperable and would require substantial repairs before they could be used again),

it was necessary to schedule them in order to satisfy the requirements of the 'automatic coverage' provision for newly acquired automobiles. There was no reason to include them in the policy because they were totally unserviceable. Brooks testified that it never occurred to him that the 'junk trailers' should be scheduled under the policy, and we find without out a doubt that his impression is entirely reasonable and understandable in light of what men of ordinary understanding would reasonably expect under these circumstances and from a reading of this insurance policy." 201 F.Supp. at 127.

The court continued:

> " . . . We further believe that a fair and practical interpretation of the policy supports our conclusion that the phrase 'all automobiles owned by the named insured' does not contemplate a vehicle which is in such a position or condition that a reasonable person would not include it in a policy of public liability insurance. Because the 'automatic coverage' provision inures to the insured's benefit is all the more reason why, under the liberal construction rule, every reasonable effort, not, however, amounting to a change in language, should be invoked to secure that benefit to the insured . . . ." 201 F.Supp. at 128.

We hold that when the Cadillac was delivered to the insured the defendant company insured all automobiles owned by the insured and her spouse, since we further hold that the 1967 model Sunbeam Alpine in its wrecked and inoperable condition was not an automobile within the meaning of the policy. Therefore, we conclude that the Cadillac was a "newly acquired automobile" which was covered by the policy at the time of the accident in question. *Compare Manns v. Indiana Lum. Mut. Ins. Co. of Indianapolis*, Tenn.App., 482 S.W.2d 557 (1971).

## II

■ The provision in the "newly acquired automobile" clause that no insurance shall be applicable thereunder unless as a

condition precedent the named insured, within thirty days following delivery of the newly acquired automobile, applies to the company for insurance on it does not preclude coverage of a newly acquired automobile during the thirty day notice period; it merely precludes coverage under that clause after the thirty day notice period has expired unless during that period the insured applies to the company for insurance on the newly acquired automobile. *Glacier Gen. Assur. Co. v. State Farm Mut. Auto. Ins. Co.*, Mont., 436 P.2d 533 (1968); *Inland Mutual Insurance Company v. Stallings*, 263 F.2d 852 (4th Cir. 1959); *Merchants Mut. Casualty Co. v. Lambert*, N.H., 11 A.2d 361 (1940), 127 A.L.R. 483; 7 Am.Jur.2d *Automobile Insurance* § 100 (1980). The accident in question in the instant case occurred three days after the insured and her husband acquired the Cadillac, the newly acquired automobile, and thus was covered under the thirty days automatic coverage afforded by the newly acquired automobile clause.

The decree of the Court of Appeals and that of the Chancery Court are reversed and this cause is remanded to the Chancery Court for Shelby County for further proceedings consistent with this opinion. Costs incurred upon appeal are taxed against the defendant-appellee.

HARBISON, C. J., and FONES and COOPER, JJ., concur.